MEMORANDUM *
The Equal Employment Opportunity Commission (“EEOC”) appeals, on behalf of charging parties Antonia Castrón (“Cas-trón”) and Renee Wrede (“Wrede”), the grant of summary judgment to Boeing in this Title VII enforcement action. Boeing terminated Castrón and Wrede after they received low scores on reduction-in-force (“RIF”) assessments, which Boeing uses to evaluate employees when determining which employees to lay off. The district court granted Boeing summary judgment, concluding that the EEOC had not introduced adequate evidence for a reasonable jury to conclude the legitimate, nondiscriminatory reasons Boeing advanced to justify the adverse employment actions against both charging parties were pretex-tual. The EEOC appealed.
A plaintiff alleging disparate treatment under Title VII must first establish a pri-ma facie case of discrimination by offering evidence that “give[s] rise to an inference of unlawful discrimination.” Tex. Dep’t of Cmty Affairs v. Burdine, 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). A plaintiff may establish a prima facie case either by meeting the four-part test laid out in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), or by providing direct evidence suggesting that the employment decision was based on an impermissible criterion, Cordova v. State Farm Ins. Cos., 124 F.3d 1145, 1148 (9th Cir.1997). Once a prima facie case has been made, “[t]he burden of production, but not persuasion, then shifts to the employer to articulate some legitimate, nondiseriminatory reason for the challenged action.” Chuang v. Univ. of Cal. Davis, 225 F.3d 1115, 1123-24 (9th Cir.2000). If the employer does so, the plaintiff must then show that the articulated reason is pretextual “either directly by persuading the [fact-finder] that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer’s proffered explanation is unworthy of credence.” Burdine, 450 U.S. at 256, 101 S.Ct. 1089. When the evidence is direct, “ ‘[we] require very little evidence to survive summary judgment’ in a discrimination case.” Lam v. Univ. of Haw., 40 F.3d 1551, 1564 (9th Cir.1994) (quoting Sischo-Nownejad v. Merced Cmty. Coll. Dist., 934 F.2d 1104, 1111 (9th Cir.1991)) (alteration in original). “But when the plaintiff relies on circumstantial evidence, that evidence must be specific and substantial to defeat the employer’s motion for summary judgment.” Coghlan v. Am. Seafoods Co. LLC, 413 F.3d 1090, 1096 (9th Cir.2005) (internal quotation marks omitted).
Antonia Castrón
After complaining of a hostile work environment, Castrón was transferred to a new work group and was terminated in a *507 RIF two months later, in October 2002. The critical inquiry is whether Castron’s employment experience, including her transfer and its connection to a subsequent RIF that led to her termination, would allow a jury to decide in the EEOC’s favor.
We conclude the EEOC has established a prima facie case on Castron’s behalf because of direct evidence of discriminatory animus. Cordova 124 F.3d at 1148. In RIF cases, a plaintiff can “show through circumstantial, statistical or direct evidence that the discharge occurred under circumstances giving rise to an inference of ... discrimination.” Nesbit v. Pepsico, Inc., 994 F.2d 703, 705 (9th Cir.1993).
A coworker testified that Castron’s supervisor, Bill Charlton (“Charlton”), had made a number of demeaning and derogatory comments about women. These comments, considered along with Charlton’s interactions with Castrón over the course of her employment at Boeing, are sufficient to create an inference of discriminatory motive even though the comments were not directed specifically at Castrón or made in regard to decisions about her employment. See Cordova, 124 F.3d at 1149; Dominguez-Curry v. Nev. Transp. Dep’t, 424 F.3d 1027, 1038 (9th Cir.2005); Chuang, 225 F.3d at 1128. These comments are far more severe than the “stray remarks” of an “ambivalent” nature we have previously held insufficient to establish such an inference. See, e.g., Nesbit, 994 F.2d at 705; Nidds v. Schindler Elevator Corp., 113 F.3d 912, 918-19 (9th Cir.1997). Consequently, the EEOC made out a prima facie case in relation to Castron’s transfer.
Because Boeing has articulated legitimate, nondiscriminatory reasons for its decision to transfer and subsequently terminate Castrón — her request for a transfer and her subsequent low RIF scores — the EEOC must introduce evidence from which a jury could infer that Boeing’s proffered reasons are pretextual. Burdine, 450 U.S. at 256, 101 S.Ct. 1089.
The discriminatory animus exhibited by Castron’s supervisor constitutes direct evidence of pretext, which in this case is sufficient to defeat summary judgment even though the comments did not refer specifically to Castrón. Based on Charl-ton’s sexist comments alone, a jury might reasonably infer that Charlton’s decision to transfer Castrón, rather than a male coworker about whom she complained, to a position where her job would be less secure may have resulted from improper motivations, including discriminatory intent, retaliatory intent, or both.
There is also “specific and substantial” circumstantial evidence, aside from Charl-ton’s comments, indicating the transfer was discriminatory. A jury might credit Castron’s allegations that Charlton initially refused to transfer Castrón at all, made promises to transfer her to the department she requested, and then agreed to transfer her, but only to a different department to which no other engineers from her department had been transferred in recent years. A jury might also infer discrimination based on Charlton’s assurances that Cas-trón would be exempted from the RIF process during her training, which might have been designed to encourage Castrón to accept the transfer despite her explicit (and not unwarranted) concern that the transfer might significantly increase her risk of termination. Taking note of all of the direct and circumstantial evidence, a jury might conclude that Charlton deliberately set Castrón up to fail because of her sex or because of her invocation of Title VII rights.
There is also sufficient evidence for a jury to find that Castron’s later poor RIF evaluation scores, which led to her termination, were pretextual. Castron’s super *508 visor in her new department, Rick Hobby (“Hobby”), had previously referred to Cas-trón as a “little girl” and made a “joking” inquiry as to whether she “broke a nail.” Although these comments occurred two years prior .to Castron’s firing and Boeing argues these comments are mere “stray remarks,” Hobby’s comments constitute at least circumstantial evidence of discriminatory animus.
Moreover, Hobby evaluated Castrón without asking Castroris trainer about her progress. Several employees testified that Hobby unfairly ignored Castron’s past performance evaluations, instead focusing only on her two months as a trainee in her new department, and that Hobby scored Castrón lower than he scored male employees with skills inferior to Castron’s. Coworkers’ testimony assessing Castron’s work can also be probative of pretext. See Atman v. Level 3 Commc’ns, Inc., 353 F.3d 1158, 1174 (10th Cir.2003). The EEOC has introduced sufficient evidence of pretext for a jury to infer that Hobby’s evaluation of Castrón was not worthy of credence.
Because the EEOC has presented adequate direct evidence and “specific and substantial” circumstantial evidence that Castroris termination was pretextual, entry of summary judgment was premature. A jury could find in favor of the EEOC on all of Castroris discrimination and retaliation claims regarding her transfer and termination.
Renee Wrede
In October 2002, one year after Boeing substantiated a sexual harassment claim Wrede filed, Wrede received lower RIF scores than most engineers in her skill code and was subsequently terminated.[1] These scores were lower than the scores she had received in two previous RIF evaluations in April and July of 2002. Wrede scored high enough on the earlier RIFs to avoid being vulnerable to discharge, but her scores in the October RIF dropped substantially, placing her at risk of discharge. Although several male engineers were also initially selected for termination, none of these male engineers were ultimately terminated in any of the three RIFs, because they either successfully contested them scores or found other employment within Boeing, sometimes with the assistance of their supervisors.
Both parties agree that the EEOC established a prima facie case of gender discrimination regarding Wrede under McDonnell Douglas, 411 U.S. 792, 93 S.Ct. 1817, that Boeing has articulated a legitimate, non-discriminatory reason for terminating Wrede (her low RIF scores), and that the EEOC has introduced circumstantial, but not direct, evidence that this reason for Wrede’s termination was pretextual. The parties dispute only whether the EEOC presented sufficiently “specific and substantial” circumstantial evidence that Wrede’s RIF scores were not credible to allow a jury to find pretext.
As it concedes, the EEOC must also overcome an inference arising from the fact that the same actors who made an adverse employment decision against Wre-de in the October RIF had twice given her scores that were high enough to avoid vulnerability to discharge. While recent positive employment decisions made by the same actors who later make an adverse employment decision against an employee may give rise to “an inference that no *509 discrimination took place,” Coleman v. Quaker Oats Co., 232 F.3d 1271, 1288 (9th Cir.2000), the inference in this case is somewhat weaker than the “strong inference” against bias that arises when an employer who hires or promotes a plaintiff later takes an adverse employment action against her, see Coghlan, 413 F.3d at 1096. Although a termination is rarely motivated by bias when it is initiated by the same actors who recently selected the same employee for the job or promotion in the first place, the logic differs when applied to less overtly “positive” employment decisions, such as refraining from firing an employee at the earliest opportunity or giving an employee a lukewarm evaluation, rather than a poor one. Even an extremely biased supervisor who would never hire or promote members of a particular protected class might still act cautiously by lowering an existing employee’s scores over time.
A strong inference is also inappropriate here because none of the employees who the supervisors ranked lower than Wrede in the April and July RIFs ultimately suffered as a result: all six men had their RIFs cancelled or successfully sought redeployment within Boeing, and none was laid off. Given the evidence that Wrede’s RIF scores were not worthy of credence, which we discuss further below, a jury could find that Wrede suffered discrimination, notwithstanding any inference arising from her supervisors’ prior employment decisions that were more favorable, or at least less adverse, to Wrede.
The EEOC has also offered sufficient evidence that Wrede’s RIF assessment was pretextual. Both the scores themselves, and her evaluators’ explanation of them, are simply not credible.
First, Bruce Wright (“Wright”) assigned Wrede RIF scores in October indicating “no background or experience” in areas in which she had received higher scores in earlier RIFs, indicating at least some background or experience. Wrede also received significantly lower evaluations in several soft-skill categories, such as “communication/leadership” in the October RIF than in the July RIF, even though Wright was unable to offer a non-conclusory explanation of any of the significant changes or to point to any concrete conduct, specific complaints, or written records indicating a change. Wright also contended Wrede had trouble communicating with her “dotted-line manager,” but was unable to recall who Wrede’s dotted-line manager was.
Other specific and substantial circumstantial evidence also suggests Wright lacked legitimate justification for his scoring. Several of Wrede’s coworkers and managers offered detailed testimony regarding why the RIF assessments of Wre-de’s skills were not credible. Coworkers’ and managers’ assessments of an employee’s skills and performance are probative of pretext. See Abuan, 353 F.3d at 1174. Coworker testimony is particularly relevant here because it would allow a jury to infer that Boeing’s proffered reason for termination — a poor RIF evaluation — was not only inaccurate, but is simply unworthy of credence.
Specifically, coworkers and managers familiar with Wrede’s work gave detailed testimony that Wrede was a good employee, that her skills warranted higher scores than she received, and that she performed better than several male employees who survived the October RIF. Several managers even requested that Wright transfer Wrede to their departments, but Wright denied these requests. Furthermore, Wrede’s own detailed testimony about why her low scores were not merely “wrong or mistaken,” but were “unworthy of credence,” is also evidence for the jury to consider. Tomasso v. Boeing Co., 445 F.3d 702, 708 (3d Cir.2006) (internal quotation marks omitted).
*510 Finally, Wrede, the only woman in her skill code, was laid off while every male employee identified for termination based on their RIF scores in all three RIFs ultimately remained at Boeing. According to Wrede, some of these employees retained employment because Rob Feuer-stein (“Feuerstein”), the department’s supervisor, offered them assistance in finding other positions. Wrede testified that Feuerstein did not offer her similar assistance. Assuming a jury credited Wrede’s testimony, it might then find Boeing’s asserted rationale pretextual based both on Feuerstein’s failure to treat Wrede the same as male employees and on “the inexorable zero” female employees who remained in the department after the RIF. Int’l Bhd. of Teamsters v. United States, 431 U.S. 324, 342 n. 23, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977); see also Coghlan, 413 F.3d at 1095 (“[Statistical evidence is circumstantial evidence that could, if sufficiently probative, point to bias.”).
Because the EEOC has presented specific and substantial evidence in support of Wrede’s claim that Boeing’s asserted justification for her termination was pretextual, entry of summary judgment on Wrede’s discrimination claim was also premature. A jury could reasonably conclude that Wrede’s discharge resulted from discrimination on account of sex.
For all of these reasons, the district court’s grant of summary judgment is reversed and the case remanded for proceedings consistent with this disposition.
REVERSED AND REMANDED.

 This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

. The district court granted summary judgment on Wrede’s Title VII retaliation claim because of the year that elapsed between her protected conduct and the adverse employment action. The EEOC has not appealed this decision. We therefore consider only Wrede’s discrimination claim.