NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-1020
_____

CYNTHIA ADAMS,

Appellant

v.

FAYETTE HOME CARE AND HOSPICE


_____

Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civil Action No. 2-09-cv-01368)
District Judge: Honorable Donetta W. Ambrose
_____

Submitted Under Third Circuit LAR 34.1(a)
November 14, 2011

Before: RENDELL and AMBRO, <u>Circuit Judges</u>
and JONES, II,<sup>*</sup> <u>District Judge</u>

(Opinion filed: November 18, 2011)


_____

OPINION
_____


AMBRO, <u>Circuit Judge</u>

_____

\* Honorable C. Darnell Jones, II, District Judge for the United States District Court for
the Eastern District of Pennsylvania, sitting by designation.

1

Fayette Home Care and Hospice fired Cynthia Adams after she returned from a medical leave protected by the Family and Medical Leave Act of 1993, 29 U.S.C. § 2601 *et seq.* Adams filed this suit claiming that Fayette had fired her for taking the leave, which is illegal. The District Court granted Fayette summary judgment, holding that its proffered reason for firing Adams was not pretextual. For the reasons that follow, we affirm.

## I. Background

Fayette hired Adams as a Registered Hospice Nurse in 2002. Over the next six years, Adams took four medical leaves of absence under the FMLA. In June 2009, she began her fifth medical leave. When she returned from that leave on August 31 of that year, the director and the manager of Fayette met with her to discuss a patient's allegation of misconduct. They fired her two days later.

The patient had alleged that Adams had shown him and his wife three pictures, stored on her cellular phone, of her boyfriend's genitals. Shortly thereafter, the patient told another nurse from Fayette about the incident and requested that Adams not come back. However, by that time, Adams had just begun her medical leave. Fayette's staff documented the complaint and followed up with the patient's wife, who confirmed her husband's account and reiterated that Adams was no longer welcome. App. at 149. After that, nothing happened for two months, the remainder of Adams's leave. Fayette insists that it has a policy of not communicating with staff on medical leave, and its managers testified that they have never done so. Adams protests in response that there is no evidence that the policy exists. *See* App. at 145-46, 378.

When Adams returned to work, her managers met with her to tell her about the patient's allegations. The parties dispute what happened at that meeting. Adams claims that she vigorously denied the allegations, while Fayette's managers claim that she was largely silent. *See* App. at 68-70, 150. All agree that Adams offered to let one manager search her phone for the pictures, which the manager declined.

After the meeting, Fayette's Human Resources Department went through the procedures for terminating Adams. Two days later, on September 2, Fayette's director and executive director met with Adams and informed her in writing that they were terminating her employment. Their letter recited the patient's allegations and that Adams had not denied them at the earlier meeting. App. at 140. Adams followed up the next day with a letter stating that she was wrongfully terminated and stressing that "I did not admit to anything." App. at 122.

Adams later brought this suit before the District Court, alleging that Fayette had violated the FMLA by firing her. After discovery, Fayette moved for summary judgment, and the District Court granted its motion. This timely appeal followed.

## II. Discussion

The District Court had jurisdiction under 28 U.S.C. § 1331, and we have jurisdiction under 28 U.S.C. § 1291. Our review in the summary judgment context is plenary. Thus, "we are required to apply the same test that the district court should have utilized initially." *Jackson v. Danberg*, 594 F.3d 210, 215 (3d Cir. 2010) (quotation marks and citation omitted). Summary judgment is appropriate only when there are no

genuine issues of material fact, drawing all justifiable inferences in favor of the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 255 (1986).

The FMLA and its regulations prohibit employers from retaliating against employees for taking a protected medical leave. *See* 29 U.S.C § 2615(a)(1); 29 C.F.R. § 825.220(c); *Conoshenti v. Pub. Serv. Elec. & Gas Co.*, 364 F.3d 135, 146 n.9 (3d Cir. 2004). Though the Department of Labor's regulation is based on the FMLA's "interference" provision, in substance it prohibits discrimination. *See Conoshenti*, 364 F.3d at 146 n.9. We therefore apply the burden-shifting framework that the Supreme Court first announced in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), which governs such discrimination actions. *See Potenza v. City of New York*, 365 F.3d 165, 167-68 (2d Cir. 2004) (*per curiam*) (recognizing that *McDonnell Douglas* governs FMLA discrimination actions).

There are three steps in the *McDonnell Douglas* framework. First, the plaintiff must "establish, by a preponderance of the evidence, a 'prima facie' case" of discrimination. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 (1993). Second, the defendant bears the burden of producing evidence of a legitimate, nondiscriminatory reason for firing the plaintiff. *Id.* at 506-07. Third, the plaintiff must prove, again by a preponderance of the evidence, that the defendant's proffered reason is pretextual. *Id.* at 510-11. To do so, the plaintiff must submit evidence either "cast[ing] sufficient doubt" on the defendant's proffered reason such that a factfinder "could reasonably conclude that each reason was a fabrication," or affirmatively showing that discrimination was the true reason for discharge. *Fuentes v. Perskie*, 32 F.3d 759, 762 (3d Cir. 1994). "[T]he

4

ultimate burden of proving intentional discrimination always rests with the plaintiff." *Id.* at 763.

In our case, the parties agree that the District Court's summary judgment on the first two steps was proper. Thus, we must decide whether a reasonable factfinder could conclude that Fayette's charges of misconduct were mere pretext for firing an employee who had taken medical leave. To prevail, Adams must "present evidence contradicting the core facts put forward by the employer as the legitimate reason for its decision." *Kautz v. Met-Pro Corp.*, 412 F.3d 463, 467 (3d Cir. 2005). In other words, she "must 'demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence.'" *Tomasso v. Boeing Co.*, 445 F.3d 702, 706 (3d Cir. 2006) (internal quotation marks omitted) (quoting *Fuentes*, 32 F.3d at 765). We agree with the District Court that Adams has failed to clear this hurdle.

Adams bases her first argument on Federal Rule of Civil Procedure 26(a)(1). That provision requires defendants to list, among other things, the address and phone number of anyone likely to have discoverable information. In its Rule 26(a)(1) disclosure, Fayette did not include the patient and his wife who made the allegations against Adams. App. 352-54. Adams contends that Fayette's failure to include them *per se* precludes summary judgment. However, Adams concedes that no court has established such a rule, and we think the facts of this case demonstrate why. Adams admits that she had learned the patient's identity in her first two days back at work, and Fayette disclosed the names

5

of the patient and his wife during discovery. *See* App. at 72, 151, 360. Having attended to the patient at home, she knew his address and phone number. Moreover, the record amply documents the patient's allegations, which are not complex or fact-intensive. Therefore, even if the patient and his wife may have had further discoverable information, Fayette's omission did not prejudice Adams and does not introduce an issue of material fact.

Adams next points to the two factual disputes noted above: whether Fayette had a formal policy of not communicating with employees who are on leave and whether Adams denied the allegations at the August 31 meeting. The first dispute is not really one of fact. Whatever it says in its briefs, Fayette has put forward no evidence that it had such a formal policy. We are thus content to agree with Adams, as we must on summary judgment, that the policy did not exist. However, Adams does not challenge the testimony of employees that they could not remember ever interacting with someone on leave. Fayette did not need to reduce that practice to a formal policy for a factfinder to credit it. Moreover, that it sat on the allegations for two months before reporting them to Adams does not suggest a sinister motive on its part. Fayette knew the full duration of Adams's FMLA leave in advance; if it sought to retaliate, it had no reason to wait until the leave ended. And Adams was recovering from a major surgery during her leave.

The second dispute, to be sure, at first appears to present the type of credibility determination that could call for a trial. Fayette claims that Adams did not deny the allegations at first, Adams claims she did, and Fayette cited Adams's silence when it terminated her. However, in this context the dispute is not material. Adams bears the

burden to call sufficiently into question the "core facts" on which Fayette claimed to rest its decision. *Kautz*, 412 F.3d at 467. Our jurisprudence does not limit those "core facts" to those that the employer cites in its termination letter. Whether Adams objected to the allegations when she first heard them is of no moment for us in determining their validity. Despite her opportunity for discovery, Adams does not attempt to argue now that the patient's allegations were false. Indeed, Fayette produced evidence tending to corroborate those allegations—for example, that Adams had shown a picture of male genitals to her secretary (and perhaps others). App. at 167-68, 175-77. Adams admitted as much in her own testimony. App. at 62. Considering the record in its totality, we cannot conclude that what Adams said or didn't say on August 31 is material to determining whether Fayette's proffer was pretextual.

Adams's burden is to "show[] not merely that [Fayette's] proffered reason was wrong, but that it was so plainly wrong that it cannot have been [Fayette's] real reason." *Keller v. Orix Credit Alliance, Inc.*, 130 F.3d 1101, 1109 (3d Cir. 1997) (*en banc*). Fayette contends that it fired Adams because she showed a patient lewd pictures on her cell phone. In response, Adams has not elicited "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in that contention to give a factfinder pause. *See Tomasso*, 445 F.3d at 706. We therefore affirm the judgment of the District Court.