**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 12-4256
_____

PHILIP JOHNSON,
Appellant

v.

PUBLIC SERVICES ENTERPRISE GROUP; PSEG SERVICES CORPORATION;
PUBLIC SERVICE ELECTRIC AND GAS COMPANY; ESSEX COUNTY COLLEGE
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil Action No. 2:10-cv-03795)
District Judge:  Honorable Dickinson R. Debevoise
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
July 1, 2013
Before:  RENDELL, FISHER and GARTH, <u>Circuit</u> <u>Judges</u>

(Opinion filed: July 1, 2013)
_____

OPINION
_____

PER CURIAM

Philip Johnson, proceeding pro se, appeals from an order of the United States

District Court for the District of New Jersey denying his request to reopen discovery and

granting Appellees' motions for summary judgment.  For the reasons set forth below, we

will affirm.

# I.

Because we write primarily for the parties, we will recite only the facts necessary for our discussion. Johnson brought this action against Public Services Enterprise Group ("PSEG"), PSEG Services Corporation, Public Service Electric and Gas Company ("PSE&G"), and Essex County College, alleging breach of contract, fraud, discrimination, and negligence, in connection with PSE&G's rescission of a conditional offer of temporary employment.

In 2009, Johnson was a participant in the Energy Utility Technology Degree Program ("EUT Program") at Essex County College, which offered him the opportunity to apply for a temporary, at-will position with PSE&G, provided he successfully completed specific course work. Johnson was required to sign an "Energy Utility Technology Degree Program Student Agreement" ("Student Agreement") which stated that in order to participate in the EUT Program, he must possess a valid driver's license, with no significant violations within the last five years, as well as successfully pass the company's background check with no significant criminal activity within the past five years. (Supp. App. 87) The PSE&G website similarly states that to qualify for the program, an applicant must pass a background check, including driving history. (Supp. App. 83) On January 9, 2009, Johnson submitted an application for employment with PSE&G, which included an affidavit stating that Johnson understands that his "employment is contingent upon. . .a satisfactory background investigation. . ." (Supp. App. 94) The employment application authorized PSE&G to use an outside agency to

conduct a background check.  (Id.)  Johnson attached to his application one page of his

Federal Bureau of Investigation ("FBI") Record of Arrests and Prosecutions ("RAP

Sheet"), which outlined four incidents, two of which had occurred in the past five years:

(1) a May 2006 arrest and charge for criminal contempt and trespass; and (2) an August

31, 2006 arrest and charge for criminal contempt and trespass, acting in a manner to hurt

a child, and harassment.  (Supp. App. 97)[1]

On April 23, 2009, Johnson received an offer letter for temporary employment at

PSE&G, which stated: "This offer is conditional upon a satisfactory background

investigation. . ." (Supp. App. 51)[2]  The tentative start date was May 11, 2009.  (Id.)  On

May 6, 2009, PSE&G ordered a background check from First Advantage, the consumer

agency to which all background checks were outsourced.  (Supp. App. 99)  The report

issued by First Advantage indicated a "PASS" status with regard to everything except

driving history, which was listed as "REVIEW" because he had received two points for

failing to obey a traffic device and because his license had been revoked and restored the

year prior.  (Supp. App. 103)  The criminal arrests and convictions that Johnson disclosed

in his employment application did not appear in the background check.  (Supp. App. 104-

106)

---

[1] The other two incidents were A December 1984 conviction of petit larceny a January
1986 conviction of unlawful possession of marijuana and disorderly conduct.
[2] The "Bargaining Unit Job Offer Script" also provides: "This Job Offer is contingent
upon you successfully completing: Medical/Drug Screen; Background Investigation
Check."  (App. 11)

On May 8, 2009, Johnson received a letter from PSE&G stating that First Advantage was unable to verify his complete criminal history.[3] (Supp. App. 52) The letter explained that "based upon this information, PSEG does not intend to offer you employment with the Company. However, prior to making a final decision, PSEG urges you to review the attached report and Summary of Your Rights under the Fair Credit Reporting Act." (Id.) Johnson was given five days to report any inaccuracies and PSE&G stated that it would not make a final employment decision until May 22, 2009. (Id.) Johnson claims that he went to PSE&G's Human Resources Department and spoke to Ms. Hollman and gave her the necessary paperwork, (Supp. App. 62), but PSE&G has no record of Johnson contacting anyone. (Supp. App. 29) Thus, pursuant to the letter, the rescission of Johnson's temporary conditional employment offer became final on May 29, 2009.

According to Randi L. Casey, the Director of Talent Acquisition for the human resources department at PSEG at the time of Johnson's application, PSE&G considered the totality of Johnson's background check, including the First Advantage report and the self-disclosed information, in deciding to rescind Johnson's offer. (Supp. App. 73) Because the 2006 arrests were not verified, their dispositions were unknown and "a concern may have arisen about whether Mr. Johnson was properly identified if his sworn background was not able to be verified." (Supp. App. 74)

---

[3] The final background report states that it was completed on May 13, 2009. (Supp. App. 99) According to PSE&G, its human resources personnel could access the status of the background check before receiving the final report from First Advantage, which explains the May 8, 2009 letter. (Supp. App. 73) Johnson has not rebutted this evidence.

Johnson claims that the background report did not reveal anything unsatisfactory, and that his offer was revoked only after he visited the corporate headquarters in April 2009 for medical equipment and fitting, where "everybody could see [his] cultural, religious and national characteristics." Johnson alleges that PSE&G's inability to verify his criminal history is pretext for employment discrimination based on race, color, sex, religion, national origin, and disability.

After the Equal Employment Opportunity Commission granted Johnson a right to sue, he filed his complaint in the District Court on July 27, 2010. A Magistrate Judge entered a scheduling order setting the discovery deadline for October 28, 2011. During discovery, Johnson served discovery requests, including Interrogatory Number 5, requesting names of those hired by PSE&G who applied with criminal or driving records, or who obtained criminal or driving records while employed. (Supp. App. 5) PSE&G objected to this interrogatory in part because it sought confidential information. Johnson did not file a motion to compel, or otherwise bring this discovery dispute to the Court's attention. During an October 28, 2011 status settlement conference, the Magistrate Judge extended discovery until December 9, 2011, and advised the parties that any discovery-relate issues must be brought to the court's attention within ten days. Johnson did not raise the issue regarding the response and objections to Interrogatory 5 with the Court, but two months later, on February 12, 2012, during a status conference, he requested that discovery be reopened. By order entered February 23, 2012, the Magistrate Judge denied

the request to open discovery. Johnson did not file a motion for reconsideration or an appeal of the order.[4]

The Appellees filed motions for summary judgment, which the District Court granted by order entered October 9. 2012. This appeal followed.

II.

We have jurisdiction pursuant to 28 U.S.C. § 1291 and exercise plenary review over the District Court's order granting summary judgment. See Giles v. Kearney, 571 F.3d 318, 322 (3d Cir. 2009). Summary judgment is appropriate only when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The moving party has the burden of demonstrating that there is no genuine issue as to any material fact, and summary judgment is to be entered if the evidence is such that a reasonable fact finder could find only for the moving party." Watson v. Eastman Kodak Co., 235 F.3d 851, 854 (3d Cir. 2000) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).

III.

We agree with the District Court that the facts in the record do not support Johnson's Title VII claims, which fail under the burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Under this framework, he must first establish "a prima facie case." McDonnell Douglas Corp., 411 U.S. at 802.

---

[4] On March 7, 2012, Johnson filed a letter in the District Court objecting to the fact that PSE&G had not provided the names of any employees or applicants with criminal records or adverse driving records, to which the Magistrate Judge responded via a Letter Order, reiterating the February 23, 2012 order. (Supp. App. 69)

6

This is accomplished by showing that the plaintiff: (1) "is a member of a protected class;" (2) "is qualified for the position;" (3) "was either not hired or fired from that position;" (4) "under circumstances that give rise to an inference of unlawful discrimination." Jones v. Sch. Dist. of Phila., 198 F.3d 403, 410–11 (3d Cir. 1999) (internal quotation marks omitted). The burden then shifts to the employer "to articulate some legitimate, nondiscriminatory reason" for the termination. McDonnell Douglas Corp., 411 U.S. at 802. If the employer is able to articulate a legitimate reason for its action, then the presumption of discrimination fails and "the plaintiff then must have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." Jones, 198 F.3d at 410.

Under the prima facie test, Johnson is a member of a protected class. As for whether he is qualified, as the District Court points out, certain facts surrounding Johnson's background check and PSE&G's revocation of his employment offer may suggest that a reasonable fact-finder could find that PSE&G miscategorized Johnson's background check and that he was otherwise qualified for the job. Johnson meets step three because he was not hired for a position at PSE&G.

Regarding the fourth step, we agree with the District Court that Johnson did not present evidence of circumstances that raise an inference of discriminatory action, and, thus, he did not make out a prima facie case of discrimination. See Jones, 198 F.3d at 410–11. "The central focus of the prima facie case is always whether the employer is

7

treating some people less favorably than others because of their race, color, religion, sex, or national origin." Sarullo v. U.S. Postal Service, 352 F.3d 789, 798 (3d Cir. 2003) (quotation marks omitted). Johnson presented no evidence to show that race, color, sex, religion, national origin, or disability had anything to do with PSE&G's decision not to hire him. Presumably the discovery Johnson concerning identification of other PSE&G employees with adverse criminal backgrounds and driving records he requested in his interrogatories could be useful in this regard. However, Johnson did not file a motion to compel with respect to this discovery and he did not bring this dispute to the Magistrate Judge's attention within ten days of the October 28, 2011 status conference, as ordered. Thus, the Magistrate Judge denied Johnson's request to reopen discovery in his February 23, 2012 order. Johnson did not file a motion for reconsideration or an appeal from this order and, thus, waived the issue. See United Steelworkers of Am., AFL-CIO v. New Jersey Zinc Co., Inc., 828 F.2d 1001, 1006-07 (3d Cir. 1987); Siers v. Morrash, 700 F.2d 113, 114-15 (3d Cir. 1983).[5]

Even if Johnson did make out a prima facie case of discrimination, PSE&G has offered legitimate, non-discriminatory reasons for withdrawing its conditional

---

[5] Even if the issue were not waived, the District Court did not abuse its discretion in denying his request to reopen discovery. See Anderson v. Wachovia Mortg. Corp., 621 F.3d 261, 281 (3d Cir. 2010) (explaining also that a discovery order will not be disturbed "absent a showing of actual and substantial prejudice"). Johnson had multiple opportunities during the initial discovery period and the extended discovery period to challenge PSE&G's objections to Interrogatory 5 and move to compel production of a list of PSE&G employees that had criminal records or adverse driving records, yet he failed to do so.

employment offer. [6] See Tomasso v. Boeing Co., 445 F.3d 702, 706 (3d Cir. 2006) (stating that the employer's burden of production at this stage is "relatively light, and the employer need only introduce evidence which, taken as true, would permit the conclusion that there was a nondiscriminatory reason for the unfavorable employment decision.") (internal citations omitted). The burden thus shifts to Johnson to present evidence from which a factfinder could infer that the PSE&G's non-discriminatory reasons for not hiring him were a pretext. See Jones, 198 F.3d at 410.

To demonstrate pretext under the summary judgment standard, a plaintiff must either (1) offer evidence that "casts sufficient doubt upon each of the legitimate reasons proffered by the defendant so that a factfinder could reasonably conclude that each reason was a fabrication," or (2) present evidence sufficient to support an inference that "discrimination was more likely than not a … determinative cause of the adverse employment action." Fuentes v. Perskie, 32 F.3d 759, 762 (3d Cir. 1994). To meet that burden, a plaintiff "cannot simply show that the employer's decision was wrong or mistaken." Id. at 765. The fact that an employer made a poor or unwise decision does not make that decision discriminatory. See Brewer v. Quaker State Oil Ref. Corp., 72 F.3d 326, 332 (3d Cir. 1995) ("[A]n employer may have any reason or no reason for discharging an employee so long as it is not a discriminatory reason."). Evidence undermining an employer's proffered legitimate reasons therefore must be sufficient to

---

[6] The reasons being that First Advantage was unable to verify Johnson's criminal background and because his license had been previously revoked.

9

"support an inference that the employer did not act for its stated reasons." Sempier v. Johnson & Higgins, 45 F.3d 724, 731 (3d Cir. 1995).

After an extensive review of the record, we are unable to locate any evidence that causes us to reasonably disbelieve PSE&G's proffered reasons for rescinding its conditional employment offer, and we are also unable to locate any evidence indicating that the rescission resulted from discrimination. To show pretext, Johnson points to the fact that PSE&G had information about his criminal background in January, when he self-disclosed information in his application. This was four months before the conditional offer was revoked and he claims a background check "must have at least been already done. . . " (Appellant's Brief at 6) The only evidence of a background check is the May 13, 2009 report from First Advantage. While there was a slight delay on PSE&G's part in processing Johnson's application, this is not sufficient evidence to infer that PSE&G's proffered reasons for revoking its offer were a fabrication.

Johnson finds it significant that the May 8, 2009 letter revoking the conditional offer predates the May 13, 2009 final report from First Advantage. However there can be no presumption of ulterior motive from this fact. As PSE&G established, its human resources personnel could access the First Advantage website and could thus see the status of a background check before receiving the final report. (Supp.App. 73) Johnson also claims that PSE&G rescinded its offer only after he visited its headquarters in April, "where everybody could see [his] cultural, religious and national characteristics" (Appellant's Brief at 6), thus intimating that prior to April 2009, he had no physical

10

contact with anyone at PSE&G. Yet, in his brief he states that in 2008 he was given tests on PSE&G property, he took classes on PSE&G property, and he was issued a PSE&G identification card, thereby rebutting any inference of discrimination in that regard. (Appellant's Brief at 5)

Overall, Johnson has not provided evidence "demonstrat[ing] such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in [PSE&G's] proffered legitimate reasons for its action that a reasonable factfinder *could* rationally find them 'unworthy of credence,'" and thus infer that nondiscriminatory reasons were not the cause for the adverse employment action. Fuentes, 32 F.3d at 765 (emphasis in original). Accordingly, the District Court properly granted the Defendants' motions for summary judgment.[7][8]

IV.

For the foregoing reasons, we will affirm the judgment of the District Court.[9]

---

[7] Johnson argues that he should have been paid for class room training. (Appellant's Brief at pp. 8-9) Because this issue was raised for the first time on appeal, we need not consider it. See Harris v. City of Phila., 35 F.3d 840, 845 (3d Cir. Pa. 1994).

[8] We agree with the District Court that no employment contract was breached in this case. The employment offer with PSE&G was contingent upon a satisfactory background check, and when Johnson did not pass, the conditional offer was rescinded. Thus, there was no contract to breach. We also agree with the District Court that any claims Johnson has against Essex County College should be dismissed for failure to comply with the New Jersey Torts Claim Act, N.J.S.A., § 59:1-1, et seq.

[9] At the end of its opinion, in a footnote, the District Court states that "equity suggests that PSE&G should elect to refund Mr. Johnson his education costs." (Supp.App. 136, n.5) We express no opinion about what PSE&G should or should not do in this situation.