

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-19-2006

# Tomasso v. Boeing Co

Precedential or Non-Precedential: Precedential

Docket No. 04-4657

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"Tomasso v. Boeing Co" (2006). *2006 Decisions.* Paper 1179.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/1179

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 04-4657

———

JOSEPH J. TOMASSO,
*Appellant*

v.

THE BOEING COMPANY

———

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 03-cv-04220)
District Judge: Honorable Edmund V. Ludwig

———

Argued January 18, 2006
Before: ROTH, FUENTES, and BECKER, *Circuit Judges*.

(Filed April 19, 2006 )

MARK S. SCHEFFER (ARGUED)
Pomerantz & Scheffer
21 South 12th Street
Room 700
Philadelphia, PA 19107
*Attorney for Appellant*

M. FRANCES RYAN (ARGUED)
Dechert
1717 Arch Street
4000 Bell Atlantic Tower
Philadelphia, PA 19103
*Attorney for Appellee*

———

OPINION OF THE COURT

———

BECKER, *Circuit Judge.*

Joseph J. Tomasso appeals the District Court's grant of summary judgment against him in an age discrimination suit against the Boeing Company, which laid him off during a reduction in force ("RIF"). Tomasso asserted claims under the Age Discrimination in Employment Act (ADEA), the Pennsylvania Human Relations Act ("PHRA"), and the Employee Retirement Income Security Act ("ERISA"). The ADEA and PHRA claims are governed by *McDonnell Douglas*

*Corp. v. Green*, 411 U.S. 792 (1973).[1] Although Boeing conceded that Tomasso made out a prima facie case of age discrimination, the District Court found that Tomasso failed, in the pretext phase, to produce sufficient evidence to discredit Boeing's rationales for his layoff.

Before this Court, as before the District Court, Boeing offered several reasons for Tomasso's layoff. Some of these rationales, if believed, could fully explain the decision; other explanations appear partial and secondary. We conclude that Tomasso adduced evidence sufficient to create a genuine issue of material fact as to whether Boeing's proffered reasons are pretextual. First, under our decision in *Fuentes v. Perskie*, 32 F.3d 759 (3d Cir. 1994), Tomasso has shown sufficient implausibilities and inconsistencies in Boeing's primary rationales to avoid summary judgment. Second, a rational factfinder could dismiss the secondary reasons as pretextual, not because they played no role in Tomasso's layoff but because they cannot explain the layoff sufficiently. We will therefore reverse the District Court's grant of summary judgment against Tomasso on his ADEA and PHRA claims.[2]

## I. Facts

---

[1]*See Fasold v. Justice*, 409 F.3d 178, 183-84 (3d Cir. 2005).

[2] Tomasso did not respond to Boeing's motion for summary judgment on his ERISA claim, and he does not press this claim on appeal. We therefore affirm the District Court's grant of summary judgment against Tomasso on the ERISA claim.

Tomasso began working for Boeing in 1962, when he was 18. In 1979, he entered the Supplier Quality Department, which oversees the quality of aircraft component parts to be delivered to Boeing by its subcontractors. Eventually Tomasso was promoted to Procurement Quality Specialist 4, placing him at the second highest of four procurement quality specialist positions. Procurement quality specialists would visit the sites where component parts were manufactured, verify the quality of the parts to be delivered, and monitor the subcontractors' operations.

In October of 2001, after having worked at Boeing for nearly 40 years, Tomasso received a 60-day notice of possible layoff. Afterwards, although he had been a salaried employee, he was offered only an hourly position in a different department. Tomasso refused to accept this major demotion, viewing it as "a slap in the face." He thought that accepting the new position would be tantamount to "going back 40 years and starting all over again." Tomasso was thus laid off in January of 2002 at age 59, following 22 years in the Supplier Quality Department, and a total of 39 years of service to Boeing. He was able to retire and collect a pension.

Tomasso's layoff resulted from Boeing's decision in 2001 to reduce operating costs and overhead by twenty percent at the site where Tomasso worked. As part of the plan, Boeing undertook a RIF in the Supplier Quality Department. Shortly before the RIF, Boeing had done away with a retention totem rating system that had been used to identify which employees would be laid off in the event of a RIF. Under the retention totem rating system, any employee, such as Tomasso, who had worked at Boeing for 30 years or more was in the group least likely to be laid off. The retention totem rating system had been

4

in place for at least 10 years prior to 2001, the year the RIF began.

Rather than using the retention totem rating system, Boeing decided which employees to lay off by having managers rate them on evaluation forms. The evaluation form for the Supplier Quality Department required that employees be assigned a score on a scale from one to five in nine categories: organizational skills, problem solving, quality of work, quantity of work, technical competence, leadership, attitude, communications, and teamwork. A score of one meant "[n]eeds [i]mprovement," three meant "[a]cceptable," and five meant "[s]trong." The employees received an overall score equal to the sum of the scores in each of the nine categories.

Prior to the evaluation, employees were placed into groups with other employees performing the same or similar work. The employees in Tomasso's group were supervised by several different managers, and the managers rated their own employees. Tomasso was evaluated by his manager, Joseph Wood.

Tomasso received a score of 21, ranking last out of 43 employees in the Supplier Quality Department. He received the following scores in the individual categories:

| | |
|---|---|
| Organizational Skills: | 2 |
| Problem Solving: | 3 |
| Quality of Work: | 2 |
| Quantity of Work: | 2 |
| Technical Competence: | 5 |
| Leadership: | 2 |
| Attitude: | 2 |
| Communications: | 1 |
| Teamwork: | 2 |

5

Despite Tomasso's low overall score, Wood did not consider Tomasso a bad employee. In fact, Wood considered all of the employees who were evaluated to be "good performing employee[s]."

The employees in a group were ranked against each other based on their overall scores. Employees were then selected for layoff, beginning with the lowest-ranked member in a group and moving up the list until the desired number of employees had been identified.

In the Supplier Quality Department, the seven employees with the lowest scores were selected for layoff. All of these employees were over the age of 40. The oldest employee in the Supplier Quality Department (age 70) was rated second to last. All employees under the age of forty were retained, and no employee under the age of forty was rated lower than fourteenth. However, only five of 43 employees in the Supplier Quality Department are under 40, and five of the 36 retained employees were Tomasso's age or older at the time of the evaluation (ages 58, 61, 61, 63, and 68).

Tomasso brought suit in the District Court for the Eastern District of Pennsylvania, alleging that Boeing laid him off due to his age. In an amended complaint, Tomasso claimed violations of the ADEA, PHRA, and ERISA. Boeing moved for summary judgment on all counts. Because the *McDonnell Douglas* burden-shifting framework governs both the ADEA claim and the PHRA claim, and because Boeing conceded that Tomasso had made out a prima facie case of age discrimination, the District Court's discussion focused on the pretext phase. The District Court found that Tomasso failed to demonstrate that Boeing's proffered rationales for his layoff were pretextual, and granted summary judgment against Tomasso on all of his

claims.  Tomasso filed a timely notice of appeal.[3]

## II.  Analysis

*Fuentes v. Perskie*, 32 F.3d 759 (3d Cir. 1994), guides us as to the burdens that an employee and an employer bear when the employer moves for summary judgment on a *McDonnell Douglas* claim.  Because Tomasso, as Boeing concedes, has made out a prima facie case, the burden of production shifts to Boeing, which must articulate a legitimate nondiscriminatory rationale for his layoff.  *Id.* at 763.[4]  This burden is "relatively

---

[3]The District Court had jurisdiction over Tomasso's federal and state law claims pursuant to 28 U.S.C. §§ 1361 and 1367, and we have appellate jurisdiction under 28 U.S.C. § 1291.  We review the District Court's grant of summary judgment against Tomasso *de novo*, and we consider the evidence in the light most favorable to him, as he is the nonmoving party.  *See S & H Hardware & Supply Co. v. Yellow Transp., Inc.*,  432 F.3d 550, 554 (3d Cir. 2005).

[4]Ordinarily, to make out a prima facie case under *McDonnell Douglas*, "the plaintiff must show (1) that he was at least forty years old, (2) that he was fired, (3) that he was qualified for the job from which he was fired, and (4) that he 'was replaced by a sufficiently younger person to create an inference of age discrimination.'"  *Fakete v. Aetna, Inc.*, 308 F.3d 335, 338 (3d Cir. 2002) (citation omitted).  However, where an employee is terminated during a RIF, the fourth element of the *prima facie* case becomes whether the employer retained employees who do not belong to the protected class.  *Showalter v. University of Pittsburgh Medical Center*, 190 F.3d 231, 234-235 (3d Cir. 1999).

light," and the employer need only "introduc[e] evidence which, taken as true, would permit the conclusion that there was a nondiscriminatory reason for the unfavorable employment decision." *Id.*

Once Boeing articulates a nondiscriminatory reason, Tomasso must respond by citing evidence that the rationale is pretextual. *Id.* As we have noted, low evaluation scores may be a pretext for discrimination, especially where, as here, an employer uses subjective criteria such as "attitude" and "teamwork" to rate its employees. *See Goosby v. Johnson & Johnson Med., Inc.*, 228 F.3d 313, 320 (3d Cir. 2000) ("'Subjective evaluations are more susceptible of abuse and more likely to mask pretext.'") (quoting *Weldon v. Kraft, Inc.*, 896 F.2d 793, 798 (3d Cir. 1990)); *see also Liu v. Amway Corp.*, 347 F.3d 1125, 1136 (9th Cir. 2003) ("Where termination decisions rely on subjective evaluations, careful analysis of possible impermissible motivations is warranted . . . .").

In order to create a genuine issue of material fact as to whether the proffered reasons are pretextual, Tomasso must "point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Fuentes*, 32 F.3d at 764. Tomasso must do more than show that Boeing was "wrong or mistaken" in deciding to lay him off. *Id.* at 765. He must "present evidence contradicting the *core facts* put forward by the employer as the legitimate reason for its decision." *Kautz v. Met-Pro Corp.*, 412 F.3d 463, 467 (3d Cir. 2005) (emphasis added). In other words, Tomasso must "demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or

8

contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them 'unworthy of credence,' and hence infer 'that the employer did not act for [the asserted] non-discriminatory reasons.'" *Fuentes*, 32 F.3d at 765 (alteration in original) (footnote omitted) (citing *Ezold v. Wolf, Block, Schorr & Solis-Cohen*, 983 F.2d 509, 531, 533 (3d Cir.1992); *Josey v. John R. Hollingsworth Corp.*, 996 F.2d 632, 638 (3d Cir.1993); *Chauhan v. M. Alfieri Co., Inc.*, 897 F.2d 123, 128 (3d Cir.1990)).

We agree with the dissent that a decision to lay off an employee in a RIF differs from a decision to fire an employee during ordinary circumstances. In either situation, however, we apply the *McDonnell Douglas* framework. In ordinary times, employees are fired for poor performance; in a RIF, even qualified employees are laid off in order to reduce personnel. In fact, Wood testified that the individuals selected for layoff were not bad employees. But even in a genuine RIF (one that is motivated on a programmatic level by economic concerns), individuals may be selected for layoff on the basis of age. For this reason, even in a RIF, we use the *McDonnell Douglas* framework to expose such discrimination. The employer must have age-neutral reasons for deciding to lay off certain employees, and the employee can challenge these reasons as pretextual. *See, e.g., Showalter v. Univ. of Pittsburgh Med. Ctr.*, 190 F.3d 231, 236-38 (3d Cir. 1999) (considering whether the employer's rationales for terminating an employee during a RIF were pretextual).

As we stated in *Fuentes*, the employee need not always offer evidence sufficient to discredit all of the rationales advanced by the employer. "If the defendant proffers a bagful of legitimate reasons, and the plaintiff manages to cast

9

substantial doubt on a fair number of them, the plaintiff may not need to discredit the remainder." 32 F.3d at 764 n.7; *see also Kautz*, 412 F.3d at 467; *Abramson v. William Paterson Coll. of New Jersey*, 260 F.3d 265, 283 (3d Cir. 2001). In *Fuentes*, we explained that the rejection of some explanations may so undermine the employer's credibility as to enable a rational factfinder to disbelieve the remaining rationales, even where the employee fails to produce evidence particular to those rationales. 32 F.3d at 764 n.7.

Boeing offers several age-neutral explanations for Tomasso's low score and the consequent decision to lay him off. We will consider these rationales in turn, applying the standard described above.

## A. Lack of Interest in Process Validation Assessments

Boeing's foremost explanation of Tomasso's layoff is that he seemed uninterested in Process Validation Assessments ("PVAs"), a type of inspection that Boeing used to monitor its subcontractors. Under the traditional system of standard source inspections, a Boeing employee would simply inspect the products ready for delivery to Boeing. In contrast, a PVA does not involve actual product inspections but instead predicts a supplier's ability to produce satisfactory products based on a review of the supplier's production capacity. The Supplier Quality Department was increasing its use of PVAs, and Wood characterized this shift as "the primary focus and goal of our organization."

Wood testified in his deposition that he gave Tomasso low scores in at least four categories because he thought that Tomasso lacked interest in performing PVAs. According to Wood, Tomasso said that "he wasn't really an advocate to the PVA process and was not comfortable working with it." In his

10

affidavit, however, Tomasso denies making such a statement: "At no time did I express to Mr. Wood that I was not interested in PVA, and I never told him that I would not participate in PVA or the transfer to the PVA method, or that I was not willing to accept new changes."

Wood further stated that Tomasso failed to attend a PVA planning session. Tomasso, however, claims that he did not attend the session because it was not mandatory, and because he was having health problems that would have made it difficult to travel to the session, which was held in New Orleans.

Wood also testified that Tomasso did not initially list developing PVA skills as a goal in a performance development partnership plan.[5] Additionally, Wood stated that procurement quality specialists were expected to identify, out of the suppliers with which they worked, those that were ready for the transition from standard source inspections to PVAs, even if management had not already designated the suppliers as candidates for PVAs. According to Wood, Tomasso did not engage in "transition PVA activities" for suppliers that management had not already designated.

Tomasso's affidavit paints a very different picture. Tomasso states that he was one of only three employees selected to participate in PVA activities for a large supplier located in Middle River, Maryland. Tomasso worked on this PVA in 2001, the year in which Boeing laid him off. Wood characterizes the Middle River project as a PVA training, and

---

[5]Performance development partnership plans appear to be forms that employees first fill out themselves and then discuss and revise with their managers.

11

claims that Tomasso did not participate as avidly as other employees. However, Wood conceded that the Middle River team did a good job and that as far as he knew, Tomasso was an integral part of the team.

Tomasso also claims that during reviews in August and December 2001, Wood did not state that Tomasso's performance, including his work on PVAs, was deficient in any respect. In fact, Wood wrote on Tomasso's evaluation for January through December 2001: "Joe—goals and objectives achieved to acceptable levels for this year. Initial PVA process started with supply base." Wood also marked on the evaluation that Tomasso had met expectations relating to planning PVA audits on his selected suppliers.

Finally, Tomasso states that he began to transition his primary supplier to PVAs, and completed the transition in December of 2001 (after he was selected for layoff). This supplier accounted for a full 75 percent of Tomasso's workload.

In short, Tomasso and Wood tell radically different stories about Tomasso's interest in PVAs. A factfinder who credited Tomasso's testimony could conclude that Wood gave him acceptable evaluations for his PVA work and never told him that he needed to improve or increase his PVA work, that Tomasso began to transition his primary supplier to PVAs, and that he was selected to participate in an important PVA project soon before he was laid off. The factfinder could further conclude that Tomasso never expressed disinterest in PVAs, and that he missed a PVA transition meeting solely for health reasons.

Since Tomasso's evidence relates directly to his interest in and aptitude for PVAs, it involves "core facts" relevant to Boeing's explanation for Tomasso's dismissal. *See Kautz*, 412

F.3d at 467. Tomasso's evidence, if believed, does not merely suggest that the low score assigned by Wood was "wrong or mistaken," *Fuentes*, 32 F.3d at 765, or that Wood innocently misperceived Tomasso's interest in PVAs. Rather, one who believed Tomasso's affidavit could find "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in Boeing's explanation as to deem it "'unworthy of credence.'" *Id.* at 765 (citation omitted). To be sure, Tomasso discredits Boeing's rationale in part by pointing to external evidence, such as earlier evaluations and his participation in the Middle River Project. But such evidence can be used to show pretext. *See Sheridan v. E.I. DuPont de Nemours and Co.*, 100 F.3d 1061, 1073-74 (3d Cir. 1996) (en banc) (stating that an employee could show pretext in part by adducing "affirmative evidence of her own accomplishments," including awards, a promotion, and a salary increase). In sum, Tomasso's alleged lack of interest in PVAs does not provide a sufficient basis for summary judgment.

## B. Refusal To Share Technical Knowledge

Wood also stated that Tomasso received a low score on his evaluation because he was unwilling to share his technical knowledge with other Boeing employees. Wood testified: "I can almost quote [Tomasso] — 'I want to be left alone to do and handle my part of the supply base. I'm not interested in training people or providing working relationships with some of my other peers in those areas.'" Tomasso, however, denies that such an exchange occurred: "I never told Mr. Wood that I wanted to be alone or left alone, and I never told Mr. Wood that I was not interested in training people or being involved in working relationships with my peers."

Tomasso's affidavit flatly contradicts Wood's

13

deposition on this point. Tomasso denies having made the very statement that apparently convinced Wood that he was unwilling to share his technical knowledge. Thus, our decision in *Fuentes* precludes summary judgment on this basis.

### C. Boeing's Remaining Rationales

Boeing offers additional rationales, but they do not appear sufficient to explain Tomasso's layoff. Even if a rational factfinder would have to conclude that these rationales played *some* role in Tomasso's layoff, the factfinder would not have to conclude that they provide a *sufficient* explanation. *See White v. Columbus Met. Hous. Auth.*, 429 F.3d 232, 245 (6th Cir. 2005) (stating that a plaintiff may show pretext "by showing that the proffered reason was insufficient to warrant the challenged conduct."); *Holmes v. Potter*, 384 F.3d 356, 361 (7th Cir. 2004) ([P]retext . . . may be proved by showing . . . that the stated reason is insufficient to warrant the adverse action.") (citation omitted).

As Boeing appears to concede, two of the remaining rationales may explain two of Tomasso's low scores, but not the other seven. First, Wood testified in his deposition that Tomasso received a score of two for "organizational skills" because Tomasso did not maintain complete folders on his suppliers.[6] Second, Wood stated that Tomasso received a score of one for "communications" in part because he was difficult to

---

[6]Wood stated that he informed Tomasso of the problem and that Tomasso corrected it at some point. Tomasso, however, claims that Wood never mentioned any problems with his supplier folders.

reach while working onsite at his primary supplier and because of poor attendance at weekly meetings.[7]

Even if we assume that these rationales adequately explain Tomasso's low scores for "organizational skills" and "communications," a rational factfinder could conclude that they are insufficient to explain Tomasso's low overall score. Although Tomasso received a perfect score of five in "technical competence," he received a score of two in "quality of work," "quantity of work," "leadership," and "attitude." These low scores remain unexplained. If Tomasso had received higher scores in these or other areas, he would have been ranked high enough to avoid being laid off. Because Tomasso need not demonstrate that Boeing's entire "bagful" of reasons is pretextual, *Fuentes*, 32 F.3d at 764 n.7, especially where a rational factfinder could conclude that the reasons in question are insufficient, Wood's concerns about Tomasso's supplier folders and meeting attendance do not provide an adequate basis for a grant of summary judgment.

Wood also stated in his deposition that Tomasso had become less involved with suppliers who provided dynamic components to Boeing, even though Tomasso's greatest expertise lay in this area. However, Wood raised this issue in response to a deposition question about whether Tomasso's high level of technical competence might outweigh his alleged deficiencies in other areas. Thus, Wood did not appear to cite

---

[7]Tomasso represents that he missed meetings because he was working onsite and was never told that he should attend more meetings. He also states that he participated in every meeting that he was told was mandatory.

15

Tomasso's decreased involvement in his area of expertise as an independent reason for his low score. A rational factfinder could conclude that this reason did not sufficiently explain Tomasso's layoff.[8]

### III. Conclusion

Tomasso has cast sufficient doubt on Boeing's primary explanations for his layoff under *Fuentes*.[9] Furthermore, a

---

[8]Tomasso also appears to contend that the evaluation process and the RIF were part of a broad plan to lay off older employees. We find no evidence to support this argument. To the extent that Tomasso bases his argument solely on the abolition of the retention totem rating system, which gave preference to employees with greater seniority, his argument is at odds with *Hazen Paper Co. v. Biggins*, 507 U.S. 604 (1993). In *Hazen Paper*, the Supreme Court stated, "[b]ecause age and years of service are analytically distinct, an employer can take account of one while ignoring the other, and thus it is incorrect to say that a decision based on years of service is necessarily 'age based.'" *Id.* at 611. Under this principle, Boeing's decision to reduce protection against layoff for employees with greater seniority cannot, without more, be equated with an attempt to lay off older employees.

[9]We comment briefly on the dissent, which contends that Tomasso failed to call Boeing's proffered rationales into doubt. Claiming merely to analyze Tomasso's layoff within the context of the RIF, the dissent subverts, *sub silentio*, the clear mandate of *McDonnell Douglas* and *Fuentes*. As discussed above, *see supra* p. 11, we agree with the dissent that the RIF provides context

important to the layoff.  Indeed, our analysis incorporates the RIF. In most cases, we inquire whether the proffered rationales explain why the employer views the employee as deficient, and hence subject to termination in ordinary times.  Here, however, we asked whether Boeing's asserted rationales adequately account for the view that Tomasso was, in the words of the dissent "the worst of the best, *i.e.*, an adequate or even high-performing employee who is under-performing relative to his peers."  Dis. Op. at 1-2.

Therefore, our disagreement with the dissent has nothing to do with an abstract debate about the role of context and everything to do with the facts of this case.  The dissent first discusses Tomasso's failure to attend meetings, yet it fails to acknowledge that this rationale can explain only one of nine scores.  Dis. Op at 3.  Surely, Boeing is not entitled to summary judgment under *McDonnell Douglas* and *Fuentes* on the basis of an obviously insufficient justification for Tomasso's layoff.

Second, the dissent states, "Wood's failure to state that Tomasso's performance was deficient is insufficient to defeat summary judgment."  Dis. Op. at 3.  This contention is true, but irrelevant.  We do not base our decision on Wood's failure to characterize Tomasso's performance as deficient.  Under *McDonnell Douglas*, it is Tomasso's refutation of Boeing's proffered rationales that defeats summary judgment.

Third, the dissent asserts that "Tomasso does not point to any evidence that contradicts Wood's perception that Tomasso's attitude and teamwork lagged behind his peers."  Dis. Op. at 3-4.  This statement is simply incorrect.  As discussed above, Wood claimed that Tomasso stated that he was uninterested in working with others, but Tomasso denies that he made such a statement.

17

rational factfinder could conclude that the remaining reasons do not adequately explain the decision to terminate him. Therefore, Tomasso has created a genuine issue of material fact as to whether Boeing laid him off due to his age. We will therefore reverse the order of the District Court granting summary judgment on Tomasso's ADEA and PHRA claims, and remand for further proceedings. As noted above, *see supra* note 2, we will affirm the grant of summary judgment on the ERISA claim.

---

*See supra* p. 13. Moreover, Wood stated that his "dominant reason" for giving Tomasso low scores in attitude and teamwork was his perception that Tomasso was uninterested in PVAs. As we discussed at length, Tomasso cited extensive evidence to refute the claim that he was uninterested in PVAs. *See supra* pp. 11-13.

Based on a close analysis of the facts in this case, we fail to see how we could affirm the grant of summary judgment while remaining faithful to *McDonnell Douglas* and *Fuentes*. We are skeptical that under the dissent's view, an employee laid off during a genuine RIF could *ever* survive summary judgment on a *McDonnell Douglas* claim. As we mentioned earlier, even in a RIF motivated by economic necessity, individual employees may be terminated on the basis of age, and we use the *McDonell Douglas* framework to lay such discrimination bare. *See supra* p. 9.

18

**ROTH**, Circuit Judge, **concurring in part and dissenting in part**:

Although the majority correctly recognizes that a decision to terminate an employee as part of a RIF differs from a decision to fire an employee for other reasons, it fails to apply this distinction in any meaningful way to the pretextual analysis outlined in *Fuentes*. 32 F.3d at 759. In short, the RIF contextualizes Boeing's proffered rationales for terminating Tomasso so as to make them plausible and consistent. For these reasons, I respectfully concur in part and dissent in part.[10]

It is axiomatic that discrimination claims resulting from a RIF differ from a decision to fire an employee for another reason. *See*, *e.g.*, *Showalter*, 190 F.3d at 234-235 (outlining the distinction as applied to the prima facie requirements for bringing a claim under *McDonnell Douglas*). This distinction, however, goes beyond the prima facie requirements to necessitate a different hermeneutic for evaluating an employer's conduct during a RIF. For example, in *Hook v. Ernst & Young*,

---

[10] I concur with footnote two of the majority's opinion, which affirms the grant of summary judgment against Tomasso on the ERISA claim.

19

we noted, with respect to a complaint pursuant to Title VII, that "a plaintiff whose employment position is eliminated in a corporate reorganization or work force reduction carries a heavier burden in supporting charges of discrimination than does an employee discharged for other reasons." 28 F.3d 366, 375 (3d Cir. 1994) (citing *Wilson v. Firestone Tire & Rubber Co.*, 932 F.2d 510, 517 (6th Cir. 1991)).

In a RIF, a company is often forced to terminate the worst of the best, *i.e.*, an adequate or even high-performing employee who is under-performing relative to his peers. As such, more nuanced distinctions must be drawn between retained and terminated employees. These perfectly legitimate business distinctions manifest themselves most saliently in two respects. First, subjective criteria take on a greater significance as the employer looks to draw finer distinctions between employees. Thus, subjective categories such as "attitude" and "teamwork" need to be viewed not just in light of the warning against such criteria articulated in *Goosby*, 228 F.3d at 313, but also in light of the fact that employers must distinguish otherwise competent employees.

Second, since the margin of distinction between terminated and retained employees often shrinks during a RIF, the employer's margin of appreciation to make a good faith mistake in evaluating talent must be respected. As this Court noted in *Fuentes*:

> To discredit the employer's proffered reason, however, the plaintiff cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute

20

> at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent.

32 F.3d at 765. Finally, lest one think that RIF will become a mask behind which discriminating employers may hide their animus, a court may always question whether a true RIF, for example one perpetuated by a business decline, occurred. *See*, *e.g.*, *Gaworski v. ITT Commercial Fin. Corp.*, 17 F.3d 1104, 1109 (8th Cir. 1994) (questioning whether the company was actually conducting a RIF).

As the majority notes, Tomasso has produced no evidence that the RIF was part of a broad plan to lay off older employees. Maj. Op. at 16 n. 8. Consequently, we should allow the RIF to contextualize Boeing's proffered rationales. Applying this lens to Boeing's conduct, Tomasso has not adduced evidence sufficient to create a genuine issue of material fact as to whether Boeing's proffered reasons are pretextual. For example, Tomasso claims that he was not informed that attendance at crew meetings was mandatory. If Tomasso had been fired for cause as a result of his failure to attend such meetings, then the optional nature of the meetings would be a significant factor in questioning their relevance and, consequently, whether the rationale was a pretext. In a RIF, however, Tomasso's reluctance "to go the extra mile" and attend optional meetings, or the PVA planning meeting, become plausible reasons for his termination. In this vein, Wood's failure to state that Tomasso's performance was deficient is

21

insufficient to defeat summary judgment.[11]

Moreover, Tomasso does not point to any evidence that contradicts Wood's perception that Tomasso's attitude and teamwork lagged behind his peers. *See Furr v. Seagate Tech.*

---

[11] The language of Tomasso's affidavit is especially illuminating. Tomasso questions Boeing's motives by painting himself as a competent employee:

> at no point did Mr. Wood indicate that I was *deficient* in meeting any of my job requirements. He also did not express to me a *dissatisfaction* with the way I was transitioning to the PVA method, or point out any *deficiencies* in my performance with regard to PVA. In fact, Mr. Wood indicated in both of my performance meeting that I was *meeting* all my expected levels of accomplishment. (emphasis added).

> I had never been *reprimanded or counseled* for not attending (crew meetings), and my non-attendance was *never an issue* in my performance reviews. I have always attended, or called in to be present by phone at, every meeting which I was told was *mandatory*. (emphasis added).

Such observations miss the point; many competent employees are legitimately terminated in a RIF. As such, Tomasso's competency is insufficient to defeat summary judgment.

22

*Inc.*, 82 F.3d 980, 988 (10th Cir. 1996) (noting that "[i]t is the manager's perception of the employee's performance that is relevant"). For example, Tomasso fails to proffer a competing employee review, or any form of relative comparator, that demonstrates a perception of superior performance vis-à-vis his peers. Since Tomasso has failed to carry his burden, I would affirm the order of the District Court granting summary judgment to Boeing on Tomasso's ADEA, PHRA, and ERISA claims.