NOT PRECEDENTIAL

IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-3270
_____

EDWARD O'CONNELL,

Appellant

v.

ASSOCIATED WHOLESALERS, INC.
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 12-cv-02540)
District Judge:  Hon. James Knoll Gardner
_____

Submitted Under Third Circuit LAR 34.1(a)
March 6, 2014

Before:   AMBRO, JORDAN and ROTH, *Circuit Judges*.

(Filed: March 10, 2014)
_____

OPINION OF THE COURT
_____

JORDAN, *Circuit Judge*.

Edward O'Connell appeals the grant of summary judgment in favor of his former

employer, Associated Wholesalers, Inc. ("AWI"), for age discrimination claims he

brought under the Age Discrimination in Employment Act of 1967, as amended (the

"ADEA"), 29 U.S.C. §§ 630, *et seq.*, and the Pennsylvania Human Relations Act (the "PHRA"), 43 Pa. Cons. Stat. § 951 *et seq.*  For the reasons that follow, we will affirm.

## I.     Background[1]

O'Connell was hired in January 1996 by AWI, a wholesale distributor of food and grocery-related products, and worked for the company until his termination in 2010.  He was 44 years old when he was hired and began to work as a Category Management Director for AWI's "Center Store," a job he held until early 2008.[2]  In April 2008, Bernie Ellis, the President of AWI, implemented a reorganization which included making O'Connell the Director of Procurement and Private Brands.  This was not a promotion and did not change his salary.  Around the same time his job changed, O'Connell began reporting to Wilford B. Donovan III, the Vice President of Center Store.  In his new position, O'Connell oversaw the Center Store inventory, which included responsibilities to supervise the procurement of products, eliminate overstock products, and develop marketing strategies.

O'Connell felt that Donovan became "increasingly critical" of his job performance soon after the reorganization.  (App. at 122.)  According to O'Connell, he received criticism for incidents that were blown out of proportion or were unfairly recorded, which led him to think that he was being targeted for termination based on his age.

---

[1] Consistent with our standard of review, *see infra* note 8, we view the facts in the light most favorable to the non-movant, O'Connell.

[2] "Center Store" refers to AWI's dairy, frozen, grocery, health, and beauty products departments.

In January 2010, Donovan asked O'Connell "out of the blue" when he was going to retire. (App. at 124.) That was the only instance in which Donovan asked O'Connell about retirement.[3] Around the same time, AWI hired Dennis Kreitz, who was in his 30s, as a Category Manager of the Center Store. Donovan asked O'Connell to train Kreitz on duties that O'Connell had taken over from a recently resigned Category Manager and for which O'Connell did not receive any increase in salary. O'Connell trained Kreitz for approximately the next six months until O'Connell was terminated. As a consequence, "[e]verything … Kreitz was responsible for at the time of [O'Connell's] termination came off [O'Connell's] desk."[4] (App. at 128.)

O'Connell was terminated on July 19, 2010, at the age of 58. A written notice addressed to O'Connell on that date stated that his "position as Director, Procurement and Private Brands [wa]s being eliminated." (App. at 165.) O'Connell testified at his deposition that he had "no idea what Kreitz did after [his] termination" and that he did not know who took over his responsibilities. (App. at 129.)

Between July 2009 and December 2010, Donovan terminated two additional employees who were 40 years old or older and hired at least three manager- or director-

---

[3] When asked at his deposition whether there were "[a]ny other comments or conversation[s] that would lead [him] to believe age was a factor" in his termination, O'Connell testified that Donovan made two hostile comments in April 2009 and April 2010 about a business-related dispute and a special project, respectively. On their face, these comments were unrelated to age.

[4] Kreitz left AWI around April 2011.

level employees who were younger than O'Connell.[5] In addition, AWI hired a 60-year-old individual for a new director-level position nine months after O'Connell left. Overall, between July 2009 and December 2010, AWI hired 43 new employees and terminated 75 employees at the AWI facility where O'Connell worked.[6]

O'Connell testified that, even before being terminated, he believed that he was being targeted based on his age but did not raise any complaints or concerns at the time because he "felt intimidated to do so." (App. at 118.) On December 5, 2010, several months after his termination, O'Connell sent Audrey Schein, AWI's Vice President of Human Resources, a letter stating that, "upon reflection, I feel that my age was the primary reason for termination of my employment." (App. at 206.) In response, Schein wrote that "age was not a factor" in AWI's decision to terminate O'Connell but that

> [d]eclining sales required a close examination of the allocation of resources necessary to accomplish the goals and objectives of [AWI]. As a result, functional areas and departments were restructured to achieve greater efficiency, reduce expenses and increase customer focus and service levels. Some positions throughout [AWI] were eliminated and, unfortunately, your position was one of them.
>
> The decision to eliminate a position was based on the position itself not on who held the position.

(App. at 207.)

O'Connell subsequently filed a charge of discrimination with the United States Equal Employment Opportunity Commission ("EEOC"), alleging that AWI terminated

---

[5] There is no indication that any of these employees took over any of O'Connell's responsibilities.

[6] O'Connell does not dispute that the relevant time frame for this case includes July 2009 through December 2010.

4

his employment in violation of the ADEA. He also filed a charge with the Pennsylvania Human Relations Commission, alleging a violation of the PHRA. O'Connell brought this discrimination suit in the United States District Court for the Eastern District of Pennsylvania after the EEOC issued a right-to-sue letter.[7] Following the District Court's grant of summary judgment in favor of AWI, O'Connell timely filed this appeal.

## II. Discussion[8]

Under the ADEA and PHRA, an employer is prohibited from discharging an individual because of the individual's age.[9] When claims under the ADEA and PHRA

---

[7] AWI does not dispute that O'Connell met the procedural prerequisites to file the instant action.

[8] The District Court had jurisdiction under 28 U.S.C. § 1331. We have jurisdiction pursuant to 28 U.S.C. § 1291. We review the grant of summary judgment de novo, applying the same standard as the district court. *Lichtenstein v. Univ. of Pittsburgh Med. Ctr.*, 691 F.3d 294, 300 (3d Cir. 2012). "Summary judgment should only be granted if 'there is no genuine dispute as to any material fact.'" *Id.* (quoting Fed. R. Civ. P. 56(a)). "In considering the record, we must draw all reasonable inferences in favor of the non-moving party … ." *Id.*
We exercise plenary review of a district court's authority under the Federal Rules of Civil Procedure and its interpretation of those rules. *Lassiter v. City of Phila.*, 716 F.3d 53, 54 n.1 (3d Cir. 2013); *EBC, Inc. v. Clark Bldg. Sys., Inc.*, 618 F.3d 253, 264 (3d Cir. 2010).

[9] The ADEA provides, in relevant part, that "[i]t shall be unlawful for an employer … to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). The PHRA provides, in relevant part:

> It shall be an unlawful discriminatory practice … [f]or any employer because of the … age … of any individual … to discharge from employment such individual … or to otherwise discriminate against such individual … with respect to compensation, hire, tenure, terms, conditions or privileges of employment … if the individual … is the best able and most competent to perform the services required.

43 Pa. Cons. Stat. § 955(a).

5

are based on indirect and circumstantial evidence, as they are here, the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Greene*, 411 U.S. 792 (1973), applies. *Tomasso v. Boeing Co.*, 445 F.3d 702, 704-05 (3d Cir. 2006). Under the *McDonnell Douglas* framework, a plaintiff must first establish a prima facie case of discrimination. *Keller v. Orix Credit Alliance, Inc.*, 130 F.3d 1101, 1108 (3d Cir. 1997). If the plaintiff succeeds, the defendant must articulate a legitimate, non-discriminatory reason for the adverse employment action. *Id.* The burden of going forward with the evidence then shifts back to plaintiff to prove, by a preponderance of the evidence, that the articulated reason was a mere pretext for discrimination. *Id.*

AWI primarily asserts that O'Connell was terminated because his position was eliminated during budget cuts and restructuring. O'Connell does not dispute that AWI articulated a non-discriminatory reason to terminate his employment.[10] He does, however, contend that the proffered reason was a mere pretext.

The District Court granted summary judgment to AWI on the grounds that O'Connell had not established a prima facie case of age discrimination or, alternatively, that O'Connell had not shown that AWI's rationale for terminating his employment was

_____

[10] The District Court treated this case as a reduction-in-force ("RIF") case, which O'Connell argues was erroneous. A RIF case is one in which the employer's decision is "motivated on a programmatic level by economic concerns." *Tomasso v. Boeing Co.*, 445 F.3d 702, 707 (3d Cir. 2006). We apply the *McDonnell Douglas* framework regardless. *Id.* However, in a RIF case, one of the elements of the prima facie case – whether the employee was replaced by a sufficiently younger person to create an inference of age discrimination – "becomes whether the employer retained employees who do not belong to the protected class." *Id.* at 706 n.4. We assume that O'Connell has made out a prima facie case, and the RIF distinction is immaterial to our pretext analysis here.

pretextual. We agree that, even assuming *arguendo* that O'Connell had carried his burden of demonstrating a prima facie case of age discrimination, no reasonable factfinder could find pretext. Therefore, we will not address the prima facie case and will affirm on the basis that O'Connell has not met his burden of showing pretext under the *McDonnell Douglas* framework.

The District Court relied on O'Connell's failure to file a statement in opposition to AWI's statement of undisputed facts to find that AWI's proffered rationale for terminating O'Connell was not in dispute. Specifically, the Court adopted, as matters of undisputed fact, that AWI had to restructure its business in order to weather an ongoing recession; that personnel duties were realigned to increase efficiency and decrease redundancy; and that elimination of O'Connell's position was a part of those goals. Under those facts, the Court held that "no reasonable factfinder could conclude that the legitimate nondiscriminatory reason provided by [AWI] for laying off [O'Connell] was mere pretext." (App. at 53.)

O'Connell acknowledges that he failed to file a separate statement of undisputed facts in the manner required by the Court's Rule 16 status conference order. He argues, however, that the District Court improperly adopted AWI's statement of undisputed facts because nothing "in the Federal Rules of Civil Procedures, the Local Rules of Civil Procedure, or even [the District Judge's] own procedures found on the Court website" alludes to any requirement of a separate statement of undisputed facts. (Appellant's Opening Br. at 33.)

7

While O'Connell is correct that no rules or procedures mandated the filing of a responsive statement of undisputed facts, the "contention that the District Court could not act in the conceded absence of any local rule … is obviously unsound." *Eash v. Riggins Trucking Inc.*, 757 F.2d 557, 569 (3d Cir. 1985) (en banc) (quoting *Link v. Wabash R.R. Co.*, 370 U.S. 626, 633 n.8 (1962)) (internal quotation marks omitted). Federal Rule of Civil Procedure 83(b) expressly provides:

> A judge may regulate practice in any manner consistent with federal law, rules adopted under 28 U.S.C. §§ 2072 and 2075, and the district's local rules. No sanction or other disadvantage may be imposed for noncompliance with any requirement not in federal law, federal rules, or the local rules unless the alleged violator has been furnished in the particular case with actual notice of the requirement.

Fed. R. Civ. P. 83(b).

Here, the requirement to file a separate statement responsive to AWI's statement of undisputed facts was consistent with Federal Rule of Civil Procedure 56(c), which provides, in relevant part: "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by … citing to particular parts of materials in the record … or … showing that the materials cited do not establish the absence or presence of a genuine dispute … ." Fed. R. Civ. P. 56(c)(1). Moreover, the requirement for O'Connell to file a separate statement of undisputed facts – and the consequences for not doing so – were explicitly set forth in the Court's Rule 16 status conference order dated October 26, 2012:

> [A]ny party opposing a motion for summary judgment or partial summary judgment shall file and serve, in addition to a brief, a separate short concise statement, responding in numbered paragraphs to the moving party's statement of the material facts about which the opposing party contends there is a genuine dispute, with specific citations to the record, and, where practicable, attach copies of the relevant portions of the record. *All factual*

8

*assertions set forth in the moving party's statement shall be deemed admitted unless specifically denied by the opposing party in the manner set forth in this paragraph.*

(Dkt. 15 at 3 (emphasis added).) As this constituted actual notice, the District Court acted pursuant to Rule 83(b) and within its discretion to secure the just and prompt disposition of cases.[11]

Even if the Court had improperly adopted AWI's statement of undisputed facts, we would still affirm the summary judgment order because, based on the evidence of record, no reasonable factfinder could conclude that AWI's rationale was pretextual. To survive summary judgment in a discrimination case when the defendant has answered the plaintiff's prima facie case with legitimate, non-discriminatory reasons for its action, "the plaintiff must point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994). To do so, the plaintiff must show "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder *could* rationally find them unworthy of credence." *Id.* at 765 (internal quotation marks omitted). O'Connell has not carried his burden in that regard.

---

[11] We also note that O'Connell does not offer any justification for his failure to comply with the Court's order. Nor did he attempt to remedy it, even after AWI raised the issue.

9

He takes the position that AWI's non-discriminatory rationale for terminating him is "highly doubtful" (Appellant's Opening Br. at 31) and, "at best, a disputed issue" (Appellant's Reply Br. at 10) because the evidence demonstrates AWI's age-based animus towards him. He posits several reasons a factfinder might disbelieve AWI or believe that AWI was motivated by an invidious discriminatory reason: Donovan's alleged age-based animus against him, the circumstances of Kreitz's hiring and training, and the hiring patterns of Donovan and AWI in the relevant time period.

O'Connell argues that Donovan made several comments evidencing age-based animus toward him, but the only age-related remark Donovan allegedly made was "when are you going to retire." (App. at 124.) We have held that "[s]tray remarks by non-decisionmakers or by decisionmakers unrelated to the decision process are rarely given great weight, particularly if they were made temporally remote from the date of decision." *Ezold v. Wolf, Block, Schorr & Solis-Cohen*, 983 F.2d 509, 545 (3d Cir. 1992). While it is unclear to what extent Donovan took part in the decision to terminate O'Connell, there is no evidence that his question about retirement was related to O'Connell's termination. Combined with the temporal distance from O'Connell's termination – approximately seven months – it deserves no significant weight.[12] O'Connell spends significant effort painting a picture of his "unblemished career in grocery marketing" before he started reporting to Donovan (Appellant's Opening Br. at

---

[12] O'Connell's assertion that Donovan made two other work-related comments that led him to believe that he was being targeted because of his age reflects nothing more than speculation.

18), and asserting that Donovan "subjected [him] to unwarranted and unprecedented criticism of his job performance" (*id.* at 7-8). That, however, is an assertion unsupported by the record. O'Connell testified at deposition regarding prior criticism that he had received, such as a 2007 performance review, and does not dispute that he received subsequent criticism for incidents in which he raised his voice or pointed his finger in the face of another employee. O'Connell provides no meaningful connection between Donovan's criticism and age-based animus beyond mere speculation or conclusive assertions that he was being targeted for his age.

Meanwhile, O'Connell's argument that he was at least partially replaced by a younger employee – Kreitz – ignores a key fact. There is no dispute that the responsibilities that Kreitz assumed were previously the responsibilities of a Category Manager who had resigned. The duties were assigned to O'Connell, without extra compensation, before Kreitz was hired to take over those responsibilities. At most, Kreitz inherited responsibilities that were temporarily assigned to O'Connell and that were not part of O'Connell's core duties. O'Connell admitted at his deposition that he did not know how his duties were assigned after his termination to Kreitz or otherwise. Furthermore, his argument that other, younger managers or directors besides Kreitz might have taken over his responsibilities also amounts to mere speculation and is contradicted by Schein's testimony that an Account Manager for AWI's broker – not any AWI employee – is performing O'Connell's old job responsibilities.

O'Connell draws attention to evidence that three other managers or directors who were hired between July 2009 and December 2010 to work under Donovan were younger

11

than himself and that AWI hired 43 new employees "in a time of supposed austerity and cost-cutting." (Appellant's Opening Br. at 27.) However, O'Connell overlooks the undisputed evidence in the record that, in the same time period, AWI also terminated 75 employees at the plant where O'Connell worked, resulting in a net decrease in its work force. AWI asserts that, of the 43 new employees hired, 17 were 40 years old or older, and of the 75 employees terminated, 30 were under the age of 40.[13] O'Connell does not dispute those numbers. The undisputed evidence does not demonstrate the age-based animus that O'Connell tries to distill from it.[14]

Therefore, even if one were to ignore the failure of O'Connell's to file a response to AWI's statement of undisputed facts, he has not pointed to sufficient evidence in the record to allow a reasonable factfinder either to disbelieve AWI's articulated reasons for terminating him or to believe that an age-based animus was more likely than not a

---

[13] Insofar as O'Connell focuses specifically on individuals hired and terminated within Donovan's division, he glosses over the fact that AWI also hired a 45-year-old individual in August 2010 and a 60-year-old individual in spring of 2011 to work under Donovan's supervision. Even if the hiring of some under-40 individuals created a net influx of younger employees working for Donovan, that fact, considered with the rest of the evidence, does not cast sufficient doubt on AWI's non-discriminatory reasons for terminating O'Connell to overcome summary judgment.

[14] O'Connell points out that AWI did not consider "offering [him] continued employment or a position at a reduced salary." (Appellant's Opening Br. at 26.) He argues that this undermines AWI's purported "cost-cutting regimen." (*Id.*) However, AWI explained that its elimination of O'Connell's position was the result of not only cost-cutting, but also efforts to restructure the company in order to eliminate redundancies and increase efficiency – reasons consistent with a decision not to consider retaining O'Connell at a lower salary. And to the extent O'Connell is arguing that he should have been retained over younger or less experienced employees, we have rejected the argument that the law requires "the 'bumping' of lower-level sufficiently younger employees in order to retain protected workers." *Monaco v. Am. Gen. Assurance Co.*, 359 F.3d 296, 306 n.13 (3d Cir. 2004).

motivating or determinative cause of AWI's action. Accordingly, he has not demonstrated that AWI's non-discriminatory reasons for terminating him were mere pretext.

**III. Conclusion**

For the foregoing reasons, we will affirm the District Court's order granting summary judgment in favor of AWI and against O'Connell.