# U.S. COURT OF APPEALS FOR THE THIRD CIRCUIT

No. 25-1166

RENEL C. SAMPLE,
Appellant

v.

UNITED STATES OFFICE OF PERSONNEL MANAGEMENT

———————————————

Appeal from U.S. District Court, E.D. Pa.
Magistrate Judge Lynne A. Sitarski, No. 2:21-cv-01239

Before: KRAUSE, MASCOTT, and FISHER , *Circuit Judges*
Submitted Mar. 12, 2026; Decided Apr. 30, 2026

———————————————

NONPRECEDENTIAL OPINION[*]

KRAUSE, *Circuit Judge*.  Renel Sample, a human resources specialist with more than two decades of service, filed discrimination and retaliation claims against his former employer, the United States Office of Personnel Management (OPM), under Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. § 2000e *et seq*., and the Age Discrimination in Employment Act of 1967 (ADEA), 29 U.S.C. § 621 *et seq*., based on his non-selection for several positions within the agency.  Because the District Court did not err in concluding that Sample failed to rebut OPM's legitimate, non-discriminatory and non-retaliatory reasons for its decisions, we will affirm the Court's summary judgment in OPM's favor.

_____

[*] This is not an opinion of the full Court and, under 3d Cir. IOP 5.7, is not binding precedent.

# I. DISCUSSION[1]

## A. Discrimination Claim

Sample, who began his employment in 2002 as a human resources specialist in OPM's Philadelphia branch, "is Black [and was] age 54 . . . at the time" the conduct underlying this civil action occurred. Opening Br. 3. His discrimination claim stems from his non-selection for a 120-day temporary detail to serve as a branch manager in the Staff Acquisition Group (SAG) of OPM's Kansas City branch, a position ultimately given to a locally based, less-than-forty-year-old, white male OPM employee.[2]

Sample's discrimination claim is governed by the "familiar *McDonnell Douglas* burden shifting" framework. *Sarullo v. U.S. Postal Serv.*, 352 F.3d 789, 797 (3d Cir. 2003) (per curiam) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)). OPM does not dispute that Sample has made out a *prima facie* case. Thus, the crux of the parties' dispute is whether OPM has met its burden to "articulate some legitimate, nondiscriminatory reason" for not selecting Sample for the Kansas City temporary detail, *McDonnell Douglas*, 411 U.S. at 802, and, assuming the agency has done so, whether Sample has pointed to some evidence in the record establishing that OPM's proffered reasons were

---

[1] The District Court had jurisdiction under 28 U.S.C. § 1331, and we have jurisdiction under 28 U.S.C. § 1291. We review a district court's grant of summary judgment de novo. *Sargent v. Sch. Dist. of Phila.*, 165 F.4th 727, 738 n.5 (3d Cir. 2026).

[2] Throughout the District Court proceedings, Sample's discrimination and retaliation claims were premised on his non-selection for four promotional opportunities within OPM over the course of several months: (i) a temporary detail position in Kansas City; (ii) a temporary branch manager position in Philadelphia; (iii) a permanent branch manager position in Philadelphia; and (iv) a temporary detail position in San Antonio. On appeal, however, Sample's arguments as to his discrimination claim focus solely on the District Court's grant of summary judgment with respect to the Kansas City temporary detail.

"merely a pretext for discrimination" and not the "real motivation" for its decision, *Sarullo*, 352 F.3d at 797.

We agree with the District Court that, at step two of *McDonnell Douglas*, OPM has satisfied its "relatively light" burden, *Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir. 1994), by "clearly set[ting] forth" reasons for its decision that "would support a finding that unlawful discrimination was not the cause" of its decision to not select Sample for the Kansas City detail, *Sarullo*, 352 F.3d at 799 (citation modified) (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507 (1993)). OPM explained that, due to the temporary nature of the detail and the expectation that the selected individual "be familiar with the branch's staff, customers, and work projects," the agency preferred an otherwise qualified candidate to be local to the duty station, which was the "typical practice." App. 103. The posting for the position reflected as much, stating that the hired candidate would be "expected to report" to the Kansas City branch. App. 70. Of the five applicants for the position, Sample was the only one who did not reside in or near Kansas City or have experience working with the staff or customers of that branch. The applicant who was ultimately selected for the detail "lived in" and "had previously worked in the Kansas City branch," in addition to having "good relationships with the staff" and "knowledge[] about the branch's work." App. 104. This explanation, "taken as true, would permit the conclusion that there was a nondiscriminatory reason" for Sample's non-selection. *Tomasso v. Boeing Co.*, 445 F.3d 702, 706 (3d Cir. 2006) (quoting *Fuentes*, 32 F.3d at 763).

To create a genuine issue of material fact whether the proffered reasons for Sample's non-selection are pretextual, Sample must "point to some evidence, direct or

3

circumstantial, from which a factfinder could reasonably either (1) disbelieve [OPM]'s articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of [OPM]'s action." *Tomasso*, 445 F.3d at 706 (quoting *Fuentes*, 32 F.3d at 764).

In an attempt to do so, Sample hitches his wagon to OPM's Merit Promotion Plan, an internal agency document "govern[ing] the staffing of General Schedule (GS) and Federal Wage System (FWS) positions" at OPM and applicable "to all positions in the competitive service, and to excepted service positions as appropriate." App. 74. He contends that—in view of its provisions that promotions and other internal placement staffing decisions (including candidate selection) "shall be made without regard to . . . non-merit factors, and shall be based solely on job-related criteria," App. 72, and that each vacancy announcement must contain any "qualification requirement[]," App. 79—the geographic consideration, which was not spelled out in detail in the Kansas City position posting, was an impermissible criterion. As OPM convincingly explains, however, the Kansas City detail was exempted from these provisions because the position was a "[t]emporary promotion or detail to a higher graded position of 120 days or less." App. 75.[3] Plus, even assuming

---

[3] Sample seems to agree in his reply brief that the Kansas City detail was "exempt from the rules for competitive promotion," Reply Br. 8, yet he maintains that geographical considerations in hiring were not permissible "job related criteria under the OPM rules," Reply Br. 11 (citation modified). That argument still fails to appreciate that the Kansas City detail was a noncompetitive internal placement action, such that the competitive procedures set forth in OPM's Merit Promotion Plan "d[id] not apply," App. 75, and therefore the purported lack of adherence to the Merit Promotion Plan does not demonstrate pretext or "contradict[] the core facts put forward by [OPM] as the legitimate reason for its [hiring] decision," *Tomasso v. Boeing Co.*, 445 F.3d 702, 706 (3d Cir. 2006) (citation modified).

Sample's contention to be correct, relying on geographical considerations not sufficiently detailed in the job posting would merely demonstrate a procedural defect in OPM's hiring process, or perhaps that OPM's "decision was wrong or mistaken," not that "discriminatory animus motivated" OPM in not selecting Sample for the position. *Jones v. Sch. Dist. of Phila.*, 198 F.3d 403, 413 (3d Cir. 1999) (citation modified); *see also Tomasso*, 445 F.3d at 706.

Sample's other evidence of pretext also fails to persuade. *First*, Sample suggests that, because the hiring manager did not conduct interviews for the Kansas City detail, bias necessarily infected the process. As OPM explained, however, an interview was not a requirement before selecting an applicant to fill a temporary detail, and, more to the point, the hiring manager was the "sole selecting official" for the position and "knew all the applicants, . . . reviewed their resumes, and was familiar with their expertise and job experience" before making her decision. App. 104. Sample offers no evidence to undermine that explanation or to suggest why the hiring manager's familiarity with the work histories of the applicants and the needs of the temporary position were pretextual or "unworthy of credence." *Fuentes*, 32 F.3d at 765 (citation modified).

*Second*, Sample argues that, irrespective of any internal OPM guidance or policy, a candidate's location and geographic ties are "wholly subjective" criteria of the kind employers cannot rely on when hiring. Opening Br. 25 (citation modified). It is not our role to second guess common-sense factors used by an employer in making a hiring decision, including where, as here, an employer seeks a candidate who is familiar with the staff, customers, and work profile of a particular location. As we have repeatedly

5

explained, "we do not sit as a super-personnel department that reexamines" an employer's hiring decisions; "our inquiry is limited to whether the employer gave an honest explanation of its behavior," *Brewer v. Quaker State Oil Refin. Corp.*, 72 F.3d 326, 332 (3d Cir. 1995) (citation modified), and whether the employee has "point[ed] to some evidence" from which a factfinder could reasonably "believe that an invidious discriminatory reason was *more likely than not* a motivating or determinative cause of the employer's action," *Tomasso*, 445 F.3d at 706 (emphasis added) (citation modified). Sample has supplied no such evidence to undermine OPM's explanation of its preference for a candidate with proximity and ties to the branch where he would be filling in as a temporary manager. Nor has Sample shown why these factors—which were applied uniformly to each of the candidates under consideration for the Kansas City detail—are necessarily indicative of "invidious discrimination." *See Fuentes*, 32 F.3d at 767.

*Third*, Sample contends that discriminatory animus must have motivated the hiring manager because Sample was "objectively better qualified" for the Kansas City detail than the individual who was ultimately selected. Opening Br. 28. Sample stakes his qualification, in part, on his admittedly lengthier uninterrupted tenure within SAG. As OPM explained, however, the individual who was ultimately selected for the detail had (i) geographic ties to the area, (ii) nearly eight years of experience working in the Kansas City branch, and (iii) experience working in OPM's USA Staffing Office, which gave the selected candidate expertise in the "IT systems used by SAG staff to support customers." App. 104-05. So too, the selected candidate "was known to the staff" in the Kansas City branch, which allowed for "staff and customers" to maintain "rapport" and "focus[] on

6

retaining [the branch's] customer base and renewing agreements" for the next fiscal year. App. 165. All these considerations, the hiring manager reasonably believed, enhanced the selected candidate's application over Sample's for the Kansas City detail. And none of the reasons offered by OPM are "weak, incoherent, implausible, or so inconsistent that a reasonable factfinder could rationally find them unworthy of credence." *Sarullo*, 352 F.3d at 800 (citation modified). Sample has offered nothing to undermine them, beyond mere disagreement with the ultimate decision and conjecture about the hiring manager's motives.

Because Sample has not created a genuine issue of material fact as to whether OPM did not select him for the Kansas City detail for some pretextual discriminatory reason, the District Court correctly granted summary judgment to OPM on this claim. *See Jones*, 198 F.3d at 414.

### B. Retaliation Claim

Sample's retaliation claim fails as well. The viability of his retaliation claim is contingent on evidence that (1) he engaged in protected activity; (2) he suffered an adverse employment action; and (3) there was a causal connection between the two. *See Abramson v. William Patterson Coll.*, 260 F.3d 265, 286 (3d Cir. 2001). The dispute here centers on prong three, and we agree with the District Court that Sample did not introduce evidence demonstrating "a causal link between [his] protected activities and [OPM's] adverse actions." *Daniels v. Sch. Dist. of Phila.*, 776 F.3d 181, 198 (3d Cir. 2015) (citation modified).

7

To demonstrate evidence of causation, Sample relies exclusively on the temporal proximity between his filing of numerous complaints with the U.S. Equal Employment Opportunity Commission and his non-selection for a series of permanent and temporary positions within OPM during an approximately eight-month period. *See supra* note 2. Ordinarily, temporal proximity alone is not enough to establish causation, unless the evidence proffered by the employee demonstrates how his non-selection was "unusually suggestive" of a retaliatory motive. *Daniels*, 776 F.3d at 196 (citation modified). Yet nothing here is *unusually* suggestive of retaliatory animus—a high bar to meet. *See Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001). Rather, as OPM explains, the temporal proximity between Sample's "serial filing of EEO complaints," Answering Br. 46, and his non-selection was the result of OPM's need to conduct multiple hiring processes for permanent and temporary positions in Kansas City, Philadelphia, and San Antonio in quick succession and on compressed timeframes. That circumstance, standing alone, would not permit a factfinder to reasonably conclude that retaliation was more likely than not a motivating or determinative cause of Sample's non-selection. *See Fuentes*, 32 F.3d at 764; *accord Castro v. DeVry Univ., Inc.*, 786 F.3d 559, 565 (7th Cir. 2015).

Where, as here, temporal proximity alone is not unusually suggestive, "we ask whether the proffered evidence, looked at as a whole, may suffice to raise the inference." *LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n*, 503 F.3d 217, 232 (3d Cir. 2007) (citation modified). But Sample provides no other evidence of a "pattern of antagonism" by the hiring manager or other OPM employees, *Carvalho-Grevious v. Del. State Univ.*, 851 F.3d 249, 260 (3d Cir. 2017) (citation modified), nor does he point to "inconsistencies in [OPM's] articulated

8

reasons" for his non-selection or evidence suggesting other retaliatory animus on the part of OPM, *LeBoon*, 503 F.3d at 232-33. Without evidence establishing a causal link between his protected activity and the adverse employment action, Sample cannot maintain his claim of retaliation, and summary judgment for OPM was therefore appropriate.

## II. CONCLUSION

For the foregoing reasons, we will affirm.