**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 17-3293

_____

LISA HATCH,
                    Appellant

v.

FRANKLIN COUNTY, o/a Franklin County Jail; JAMES SULLEN


_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Civ. No. 1-14-cv-02318)
District Judge: Honorable Yvette Kane

_____

Submitted Under Third Circuit L.A.R. 34.1(a)
November 1, 2018

_____

Before: CHAGARES, JORDAN, and VANASKIE, *Circuit Judges*

(Opinion Filed:  December 31, 2018)
_____

OPINION*
_____


VANASKIE, *Circuit Judge.*

_____

    * This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7
does not constitute binding precedent.

Lisa Hatch appeals the District Court's grant of summary judgment in favor of Appellees in her employment discrimination suit. Hatch is a former correctional officer at the Franklin County Jail ("FCJ") who was terminated after an inmate accused her of inappropriate conduct. In response to her termination, Hatch filed suit against FCJ, Franklin County, and Captain James Sullen, alleging: disability discrimination, retaliation, and a hostile work environment under the Americans with Disability Act ("ADA"), 42 U.S.C. § 12101, *et seq.*, and the Pennsylvania Human Relations Act ("PHRA"), 43 Pa. Cons. Stat. § 951, *et seq.*; retaliation under the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, *et seq.*; and gender discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, and the PHRA. For the following reasons we will affirm.

I.

Hatch was employed by FCJ as a correctional officer from 2008 until her termination in 2014. Hatch had a history of depression and anxiety, but she failed to disclose it to FCJ prior to her hiring. In fact, FCJ first learned that she used medication for her mental health issues in June 2013, when Hatch discussed her medications with another correctional officer. Although "[t]here is an extensive factual background with respect to Hatch's employment history at FCJ, particularly in regard to alleged instances of improper conduct." (JA 8), we will only address the disciplinary incident and investigation relied on by Appellees as the reason for Hatch's termination.

On February 17, 2014, inmate Karl Rogers complained to FCJ nurses about Hatch's behavior towards him, alleging that:

2

Hatch spoke about her boyfriend and how they had not had sex in months; describe[d] her boyfriend's health issues; provided [Rogers] with her Facebook information; confirmed the two had extended conversations; describ[ed] a threesome with Officer Caleb Barnett, who she had a crush on; that Hatch would flick her tongue at him; carried a hand sanitizer bottle in the shape of a pink cat which she referred to as her "pussy" and asked if he wanted to play with it; pass[ed] gas loudly and on one occasion then referenced anal sex with [Rogers]; told him she took "psycho meds for her nerves"; told him she had two degrees and was from New York; complained about her job and that she was not chosen for the CTS [correctional treatment specialist] position; discussed the relationship between a CTS and a [correctional officer; and] alleged the same conduct had occurred to former inmate Cary Thomas.

(JA 8-9; *see also* JA 1153–54). Rogers's allegations led to an investigation by FCJ's Prison Rape Elimination Act ("PREA") Investigation Team, which is charged with investigating all allegations of sexual conduct involving inmates. Captain Sullen and Deputy Warden Michelle Weller interviewed Rogers on February 18 and 19, and Rogers reported two more instances of misconduct by Hatch. Captain Sullen immediately prohibited Hatch from working on the medical unit, where Rogers was housed at the time, pending the completion of the investigation. "The PREA team intended to speak with [Hatch] on [February] 19th regarding the allegations," but Hatch called in sick that day. (JA 9, 1412). Hatch also did not work on February 20 or 21 because she had previously requested those days off. (Appellee's Br. 20).

On February 19, Sullen asked Hatch's co-worker, Emmert Heck, to write an incident report regarding Rogers's allegations. Heck's report indicated that Rogers had previously reported Hatch's conduct to him, particularly the sexual comments she had made towards him. On February 24, Sullen reviewed a video of Hatch on the Medical

3

Unit and her interactions with Rogers. On February 25, the PREA team interviewed Hatch and she admitted to some of the conduct Rogers had alleged. (JA 502–504, 1156–1163). After the interview, Sullen asked Hatch to write her own incident report describing her interactions with Rogers. While preparing her incident report, Hatch contacted Sullen and Warden Daniel Keen to request medical leave due to her mental health conditions. The next day, Hatch requested and was granted FMLA leave from FCJ's Human Resources department. Hatch took FMLA leave from February 26 to March 25.

While Hatch was out on FMLA leave, Sullen and Weller interviewed Officer Barnett, who stated that Rogers "had also come to him with the allegations, as had other [correctional officers] . . . ." (JA 10). Other than this interview, the investigation essentially stalled during Hatch's FMLA leave. Meanwhile, in early March, Rogers wrote a letter to Franklin County officials and filed another grievance about Hatch.

Hatch returned from FMLA leave on March 24. The next day, she was interviewed by Sullen, Weller, and FCJ Human Resources employee Carrie Aaron. During the interview, Hatch admitted to more of Rogers's allegations, namely, to doing "things to make him laugh, like sing[ing] songs, stick[ing] out her tongue and other things," along with discussing her mental health problems with him. (JA 11). However, although Hatch admitted to the behavior that formed the basis of Rogers's allegations, she maintained that her behavior was not inappropriate, but rather was done to "build a rapport with inmates." (*Id.*) At the conclusion of the interview, Hatch was given a

4

*Loudermill* notice[1] informing her that FCJ had just cause to discipline her based on Rogers's complaints.

Sullen subsequently sent a memorandum to Warden Keen outlining the findings of the investigation into Hatch's conduct and recommending her termination. (JA 556–559) The memorandum explained Rogers's allegations, the interviews conducted, and the conduct to which Hatch had admitted; further, the memorandum stated that Sullen had determined that Hatch's inappropriate conduct was "unbecoming of an Officer and detrimental to the spirt of [the FCJ]." (*Id.*) Lastly, the memorandum concluded by citing numerous FCJ policies that Hatch violated, such as policies regarding appropriate standards of conduct and behavior for FCJ employees in their interaction with inmates.[2] (*Id.*) Consequently, Hatch was terminated on March 31, 2014. (JA 560–63).

After her termination, Hatch filed the complaint against FCJ and Captain Sullen that forms the basis of this appeal. Hatch twice amended her complaint, and after

---

[1] "A *Loudermill* notice is a formal notice provided to a public employee notifying the employee of the employer's intent to terminate him or her, to which the employee is given an opportunity to respond. The process for providing an employee with such notice was articulated by the Supreme Court in *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532 (1985)." (JA 11 n.12).

[2] Sullen's memorandum declared that Hatch violated the following FCJ Standards of Conduct, as summarized: (a) "Official Investigation" – failing to cooperate fully with an official investigation; (b) "Personal Conduct" – failing to behave professionally; (c) "Integrity of the Reporting System" – failing to properly submit reports; (d) "Conduct Unbecoming" – engaging in improper behavior, unbecoming of an FCJ employee; (e) "Untruthful Statement" – making untruthful statements pertaining to official duties; (f) "Courtesy" – failing to maintain proper decorum and using offensive, insolent, profane, or obscene language; and (g) "Discrimination/Harassment" – harassing an inmate. (JA 558–59).

extensive discovery, Appellees moved for summary judgment. The District Court granted the motion and Hatch timely appealed.

## II.

The District Court had jurisdiction pursuant to 28 U.S.C. § 1331. We have appellate jurisdiction pursuant to 28 U.S.C. § 1291. We exercise plenary review over the District Court's grant of summary judgment. *E.g.*, *Heffner v. Murphy*, 745 F.3d 56, 65 (3d Cir. 2014) (citation omitted). Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). If the moving party shows an absence of material fact, the non-moving party must present "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting then-Fed. R. Civ. P. 56(e)). The non-moving party "must present more than just 'bare assertions, conclusory allegations, or suspicions' to show the existence of a genuine issue." *Podobnik v. United States Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). "If the [non-moving party's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986) (internal citations omitted).

## III.

Hatch argues that the District Court erred in granting summary judgment for Appellees on each of her claims. We address each of Hatch's claims in turn.

A. The Disability Discrimination Claims

6

Disability discrimination claims under ADA and PHRA are analyzed pursuant to the same legal standard—the *McDonnell Douglas* burden shifting test. *Colwell v. Rite Aid Corp.*, 602 F.3d 495, 499 n.3 (3d Cir. 2010) (citing *Kelly v. Drexel Univ.*, 94 F.3d 102, 105 (3d Cir. 1996)); *see also McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–03 (1973). Under this framework, a plaintiff bears the burden to prove a *prima facie* discrimination case by establishing that: she has a disability, she was qualified for an employment position with or without a reasonable accommodation, and she suffered an adverse employment action because of her disability. *Williams v. Phila. Housing Auth. Police Dept.*, 380 F.3d 751, 761 (3d Cir. 2004). If a plaintiff meets that burden, the defendant then bears the burden to produce a legitimate, non-discriminatory reason for the adverse employment action. *McDonnell Douglas*, 411 U.S. at 802. If the defendant makes such a showing, the burden then shifts back to the plaintiff to demonstrate that the defendant's purported reason was really pretext for discrimination. *Id.* at 804.

Regarding pretext, "a plaintiff . . . may defeat a motion for summary judgment by *either* (i) discrediting the proffered reasons, either circumstantially or directly, or (ii) adducing evidence, whether circumstantial or direct, that discrimination was more likely than not a motivating or determinative cause of the adverse employment action." *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994). A "plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder *could* rationally find them 'unworthy of credence' and hence infer 'that the employer did not act for [the asserted] non-discriminatory reasons.'" *Id.* at 765 (citations omitted).

7

Here, Hatch asserts that she was terminated due to her mental health disability, while FCJ contends that Hatch was terminated due to her "admitted transgression of [FCJ] policies intimately related to the security of the institution and the safety of the staff and inmates therein." (JA 19). We need not reach whether Hatch has asserted a *prima facie* case of discrimination because, even assuming that she has, Hatch has failed to show that FCJ's articulated legitimate reason for firing her was pretextual. In other words, Hatch has failed to provide evidence that would allow a factfinder to disbelieve FCJ's non-discriminatory reason for firing her or to determine that discrimination was "more likely than not a motivating or determinative cause" of her termination. *Tomasso v. Boeing Co.*, 445 F.3d 702, 706 (3d Cir. 2006) (quoting *Fuentes*, 32 F.3d at 764).

In hopes of showing pretext, Hatch proffers evidence that Warden Keen and Captain Sullen made comments about her mental health and how it affected her work. But Hatch's only proof of these supposed comments is her own affidavits and deposition testimony.[3] Although a plaintiff's sworn statements by themselves may be sufficient to create a genuine dispute of material fact, *see Lupyan v. Corinthian Colls. Inc.*, 761 F.3d 314, 320–21 (3d Cir. 2014) (citation omitted), we do not consider Hatch's statements in this case to create a genuine fact issue. Considering the record of Hatch's disciplinary

---

[3] Hatch attempts to support her claims of discriminatory comments through circumstantial evidence in the form of signed certifications of four former correctional officers. However, these certifications only provide generalizations regarding comments made about Hatch and do not corroborate Hatch's assertions about the statements made by Keen and Sullen. (JA 564–71). Moreover, some of the former correctional officers contradicted their certifications in their deposition testimony. (Appellees' Supp. App. 1591–1648). Accordingly, we do not consider this evidence to corroborate Hatch's testimony.

violations, and even when viewed in a light most favorable to Hatch, her own testimony is not sufficient, standing alone, to allow a factfinder to disbelieve FCJ's non-discriminatory reason for firing her or to determine that discrimination was "more likely than not a motivating or determinative cause" of her termination. *Tomasso*, 445 F.3d at 706.

Hatch also attempts to show pretext by offering comparator evidence of non-disabled correctional officers who behaved similarly but were not terminated. To be proper comparators, these other employees must have been "similarly[] situated in all respects." *In re Tribune Media Co.*, 902 F.3d 384, 403 (3d Cir. 2018) (quoting *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992)) ("[I]n other words, [the comparator employees must have] 'dealt with the same supervisor, . . . [been] subject to the same standards, and . . . engaged in the same conduct' during [their] altercations." (internal bracketing omitted)).

Hatch cites six examples where male, non-disabled officers were not terminated for unprofessional conduct. Although all of these employees were subject to the same standards and policies, and some of them had the same supervisor as Hatch, none of them engaged in conduct that could be considered egregious. For instance, one officer was suspended for sharing personal information with an inmate, and later terminated for fraternizing with inmates. (JA 403–04, 407–08, 1427–29, 1466). Inmates accused another officer of using racial slurs; however, this officer was never investigated for such conduct and thus, never disciplined for it. (JA 590–91, 1436, 1478–79) The other four officers to whom Hatch refers were all suspended for the following incidents: talking to

9

an inmate about her religion and personal pictures on her phone; giving an inmate his phone number and posting on Facebook about dating an inmate's sister; being accused of harassment by an officer; and using vulgar language towards an officer. (*See* JA 22–24, 534–51, 1429–36, 1467–78; Appellee's Supp. App. 1536–57). Hatch has failed to identify any comparator who engaged in behavior as ongoing, personal, and sexually explicit as the behavior that led to her termination.

Thus, we agree with the District Court that Hatch failed to show that FCJ's legitimate, non-discriminatory reason for her termination was pretext for discrimination. Accordingly, we will affirm summary judgment for FCJ on Hatch's disability discrimination claims under the ADA and PHRA.

B. The Gender Discrimination Claims

Hatch also asserts claims of gender discrimination under Title VII and PHRA. Gender discrimination claims are also analyzed under the *McDonnell Douglas* burden shifting framework, and to establish a *prima facie* claim, a plaintiff must prove that: (1) she belongs to a protected class; (2) she is qualified for her position; (3) she suffered an adverse employment action; and (4) those outside the protected class were treated more favorably. *McDonnell Douglas,* 411 U.S. at 802. If a *prima facie* claim is established, the burden shifts to the employer to show a legitimate, non-discriminatory reason for the adverse employment action. *Id.* If the employer meets that burden, then the plaintiff must show that the given reason was pretext for discrimination. *Id.* at 802–03.

Once again, Hatch cannot show that FCJ's articulated reason for firing her was pretext for discrimination. Hatch contends that male correctional officers were not

10

terminated for engaging in the same conduct in which she engaged; she asserts the same comparator evidence here as she did with her disability discrimination claim. Again, we are unpersuaded by her comparator evidence and conclude that the officers whose conduct she cites were not similarly situated to her. Her inappropriate behavior with an inmate was much more egregious than theirs. Therefore, we hold that the District Court properly granted summary judgment in favor of Appellees on Hatch's gender discrimination claim.

C. The Retaliation Claims

Hatch also asserts retaliation claims under the ADA and PHRA, arguing that her termination was in retaliation for her requesting and taking medical leave. Hatch's retaliation claims are also analyzed under the *McDonnell Douglas* test. *Williams*, 380 F.3d at 759 n.3. A plaintiff must first show a *prima facie* case that: (1) she engaged in protected activity, (2) she experienced an adverse employment action, and (3) there was a causal link between her involvement in the protected activity and the adverse employment action. *Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 500 (3d Cir. 1997) (citations omitted). A casual connection can be proved by direct or circumstantial evidence, *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 279–81 (3d Cir. 2000), but courts typically "focus[] on [evidence of] two main factors[:] . . . timing and evidence of ongoing antagonism." *Abramson v. William Paterson Coll. of N.J.*, 260 F.3d 265, 288 (3d Cir. 2001) (citation omitted). If a plaintiff makes a *prima facie* retaliation case, the burden shifts to the defendant to show a legitimate, non-discriminatory reason for the

11

adverse employment action; if the defendant meets that burden, the plaintiff must then show pretext. *Williams*, 380 F.3d at 759, 759 n.3.

Here, Hatch asserts that she engaged in protected activity by requesting and taking medical leave, that she was fired, and that her firing was caused by her medical leave. She claims that the timing of her termination, days after returning from FMLA leave, demonstrates a causal nexus between her leave and her firing. Further, she claims that FCJ exhibited ongoing antagonism towards her. In contrast, FCJ asserts that Hatch was terminated due to her inappropriate behavior towards inmates.

We conclude that Hatch has failed to present sufficient evidence of a causal link between her leave and her termination. In particular, the timeline of events leading to Hatch's termination contradicts her claim of retaliation. Rogers complained about Hatch's conduct, and FCJ commenced an investigation into the matter, on February 17. Sullen and Weller interviewed Hatch on February 25. On February 26, Hatch requested FMLA leave from Human Resources, which was granted until March 25. When Hatch returned from leave, FCJ officials interviewed her again and subsequently concluded the investigation on March 31, when Hatch was fired. As the District Court aptly summarized, "the investigation of Rogers' accusations, which ultimately prompted Hatch's termination, commenced *before* [FCJ] became aware of Hatch's request for leave." (JA 27) (emphasis added). Thus, this timeline indicates a lack of a causal link between Hatch's requested leave and her termination.

Hatch contends that FCJ exhibited ongoing antagonism towards her, which she asserts shows the causal link needed to establish a retaliation claim. Hatch alleges that

12

Sullen and Keen made comments about her mental health and told her she should "find a job somewhere else." (JA 199–20). However, as explained above, Hatch's only evidence of those comments is her own testimony and a few generalized statements from former co-workers. Even if we accept Hatch's assertions as true, this is insufficient proof of the type of ongoing antagonism needed to establish a nexus demonstrating retaliation.

Additionally, Hatch alleges a retaliation claim under FMLA. Like a retaliation claim under ADA, "to prevail on a retaliation claim under [] FMLA, [a] plaintiff must prove that (1) she invoked her right to FMLA-qualifying leave, (2) she suffered an adverse employment decision, and (3) the adverse action was causally related to her [FMLA leave]." *Lichtenstein v. Univ. of Pittsburgh Med. Ctr.*, 691 F.3d 294, 301–02 (3d Cir. 2012) (citation omitted).

Hatch argues that FCJ terminated her for requesting and taking FMLA leave. She contends that the timing of her termination, days after her return from leave, coupled with Sullen's comments about her mental health, prove that her leave prompted her termination. But, as was the case with her ADA/PHRA retaliation claims, we are again unpersuaded that Hatch's termination was causally linked to anything other than her inappropriate conduct with inmate Rogers. In fact, the timing of her FMLA leave request—two days *after* Rogers reported her inappropriate conduct—suggests that her request for leave was prompted by the investigation that ultimately resulted in her termination. Thus, Hatch has not shown a nexus between her FMLA leave and her termination.

13

Accordingly, we will affirm the District Court's grant of summary judgment in favor of FCJ on Hatch's ADA/PHRA and FMLA retaliation claims.

C.

Next, we turn to Hatch's hostile work environment claims. To establish a hostile work environment claim under the ADA and PHRA, a plaintiff must prove that:

> (1) [she] is a qualified individual with a disability under the ADA; (2) she was subject to unwelcome harassment; (3) the harassment was based on her disability or a request for an accommodation; (4) the harassment was sufficiently severe or pervasive to alter the conditions of her employment and to create an abusive working environment; and (5) that [her employer] knew or should have known of the harassment and failed to take prompt effective remedial action.

*Walton v. Mental Health Ass'n of Se. Pa.*, 168 F.3d 661, 667 (3d Cir. 1999) (citations omitted). To be sufficiently severe or pervasive, harassment must be shown to be both objectively and subjectively hostile or abusive. *Id.* (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 22 (1993)) ("[T]he environment must be objectively hostile or abusive, and the plaintiff must have perceived it as a hostile or abusive environment."). To determine whether a work environment contains sufficiently severe or pervasive harassment, courts consider the totality of the circumstances. *Id.* Generally, courts look to whether a workplace was "so heavily polluted with discrimination as to destroy completely the emotional and psychological stability of [the harassed employees] . . . ." *Meritor Savs. Bank, FSB v. Vinson*, 477 U.S. 57, 66 (1986) (citation omitted).

Here, Hatch contends that she was subject to an abusive work environment because of "blatantly discriminatory, offensive comments by Captain Sullen, Warden

14

Keen, her Lieutenant supervisors[,] and her coworkers regarding her mental health conditions and mental health medications." (JA 31). Hatch again supports this claim by citing only her own affidavit and the certifications of former employees. However, even when viewed most favorably to Hatch, this evidence does not establish a *prima facie* hostile work environment claim because it does not rise to the level of severe or pervasive for several reasons.

First, Hatch admitted to openly discussing her mental health with co-workers, inmates, and her superior officers. Second, although the former employee certifications do mention isolated incidents where FCJ employees generally discussed Hatch's mental health, they do not describe the type of harassment needed to establish a hostile work environment. Third, the evidence suggests that, at most, FCJ officers only referenced her mental health on a few occasions, and such sparse discussions of Hatch's mental health do not create a severe or pervasive hostile work environment. "[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) [do] not amount to" an abusive work environment. *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998).

In sum, even when viewed most favorably to Hatch, the scant discussions of her mental health do not rise to the level of severe or pervasive harassment needed to make out a hostile work environment claim. Accordingly, we conclude that the District Court's grant of summary judgment in favor of the Appellees on Hatch's hostile work environment claims was proper.

15

IV.

For the foregoing reasons, we will affirm the District Court's grant of summary judgment in favor of Appellees.